IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Craig B. Shaffer

Civil Action No. 10-cv-00309-CBS-BNB

KIMBERLY N. SQUIRES, by and through her Guardian and Natural Parent,
LYLE K. SQUIRES
      Plaintiff,
v.

JAMES MICHAEL GOODWIN,
BRECKENRIDGE OUTDOOR EDUCATION CENTER, and
MOUNTAIN MAN, INC.
      Defendants.

---

## ORDER ON PENDING MOTIONS

---

THIS MATTER comes before the court on (1) Defendant Mountain Man, Inc.'s ("Mountain Man") Motion for Summary Judgment on Plaintiff's Sixth, Seventh, Eighth and Ninth Claims for Relief (doc. #58), filed on January 14, 2011; (2) Defendant Mountain Man, Inc.'s Motion to Exclude Plaintiff's Expert Testimony Pursuant to F.R.E. 702 (doc. # 87), filed on June 6, 2011; and (3) Defendant Breckenridge Outdoor Education Center's ("BOEC") Motion to Strike and/or Limit Plaintiff's Experts Bil Hawkins and Stanley Gale Under Fed. R. Civ. P. 702 and *Daubert* (doc. # 88), filed on June 6, 2011.

Plaintiff Kimberly Squires filed her Response to Defendant Mountain Man, Inc.'s Motion for Summary Judgment (doc. # 68) on February 4, 2011, as well as a Supplemental Memorandum Brief in Response (doc. #83) on May 26, 211.  Ms. Squires responded (doc. #102) to Defendant Mountain Man's Motion to Exclude Plaintiff's Expert Testimony on June 30, 2011, and filed her Response to Defendant BOEC's Motion to Strike and/or Limit (doc. #97) on June

1

27, 2011. Defendant Mountain Man filed a Reply Brief (doc. #71) in support of its Motion for

Summary Judgment on February 18, 2011 and a further Supplemental Memorandum Brief (doc.

#78) on May 5, 2011. Defendant BOEC submitted a Reply to Motion to Strike and/or Limit

(doc. #105) on July 11, 2011.

On September 16, 2010, the above-captioned case was referred to this court to handle all

dispositive matters including trial and entry of a final judgment in accordance with 28 U.S.C.

§ 636(c), Fed. R. Civ. P. 73, and D.C.COLO.LCivR 72.2. I have reviewed the instant motions,

the related briefs and exhibits, the arguments presented during hearings on July 20, 2011 and

October 20, 2011, and the entire case file.

## PROCEDURAL BACKGROUND

This action arises out of a ski accident that occurred at Breckenridge Ski Resort, Colorado

on February 13, 2008. The basic facts are not in dispute. At the time of the incident, Kimberly

Squires was 17 years old, with disabilities that include legal blindness, cognitive developmental

delay and cerebral palsy. Breckenridge Outdoor Education Center is a nonprofit Colorado

corporation that provides outdoor experiences for people with disabilities. On the day in

question, Jennifer Phillips was employed by BOEC as an adaptive ski instructor and paired with

Ms. Squires, and Jim Trisler, a BOEC volunteer who was assigned to assist Ms. Phillips as a

"blocker." Ms. Squires was placed in a bi-ski, the FFS Dual Ski, manufactured by Mountain

Man, Inc., which Ms. Phillips controlled from behind using tethers attached to her wrist. Ms.

Squires and Ms. Phillips started their day on Peak 9 at Breckenridge Ski Resort and skied

without incident down Bonanza, a designated "blue" or intermediate ski trial. On their second

run of the day, Ms. Squires and Ms. Phillips proceeded down Cashier trail, another "blue" run.

At some point, James Goodwin who also was skiing down Cashier lost control and crossed into the tethers linking Ms. Phillips and the bi-ski containing Ms. Squires.  The force of the collision with Mr. Goodwin caused Ms. Phillips to lose control of the tethers and therefore contact with the bi-ski.  At that point, the bi-ski and its passenger continued down Cashier trail without any control or restraint until it collided with a tree, resulting in injuries to Ms. Squires.

Ms. Squires filed her initial Complaint (doc. #1) on February 12, 2010, asserting diversity of citizenship jurisdiction and alleging four claims for relief against Defendant Goodwin and one claim against BOEC.  She filed her First Amended Complaint (doc. #5) on April 15, 2010, adding four claims against the newly joined Defendant Mountain Man.  Ms. Squires re-filed her First Amended Complaint (doc. #11) on April 19, 2010 pursuant to a request from the Clerk of the Court.  Plaintiff's Second Amended Complaint (doc. #13), the current operative pleading, was filed on June 2, 2011. The First, Second, Third, and Fourth Claims for Relief against Defendant Goodwin allege negligence per se under the Ski Safety Act, Colo. Rev. Stat. § 33-44-109(2) and common law negligence.  Ms. Squires' Fifth Claim for Relief alleges willful and wanton, reckless, and/or gross negligence against Defendant BOEC.  Ms. Squires' Sixth, Seventh, Eighth, and Ninth Claims for Relief allege strict products liability, breach of implied warranty of fitness and/or merchantability, common law negligence, and breach of express warranty against Defendant Mountain Man.  Mountain Man has moved for summary judgment as to Plaintiff's Sixth, Seventh, Eighth and Ninth Claims for Relief.[1]

Defendants have separately moved to strike and/or limit at trial the expert opinions

---

[1]Defendant BOEC also has filed a Motion for Summary Judgment (doc. #52) which will be addressed by a separate order.

3

proffered by Ms. Squires' retained experts, Bil Hawkins[2] and Stanley Gale, arguing these witnesses propose to offer opinions that fail to satisfy the requirements of Fed. R. Evid. 702 and the standards enunciated in *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993), and its progeny.  Given Mr. Gale's prominent role in Plaintiff's responses to Defendants' summary judgment motions, it is appropriate to begin by addressing the Rule 702 motions.

I.      *Defendants' Motions to Strike*

In its motion to strike, Defendant Mountain Man argues that Plaintiff's expert, Stanley Gale, is not qualified to render any opinions regarding the design or manufacture of the FFS Dual Ski.  Mountain Man further contends that Mr. Gale's proposed opinions regarding design defects and deficient product warnings or instructions do not rest on a reliable foundation or the application of a valid methodology as required by Fed. R. Evid. 702 and the Supreme Court's analysis in *Daubert.*

Plaintiff Squires argues in opposition that Rule 702 must be applied liberally and that Mr. Gale's opinions should be permitted because they would be "helpful to the trier of fact." According to Plaintiff, Mr. Gale is "qualified to proffer his opinions" based upon his "knowledge, skill, experience and training as a ski patrol officer of 38 years" and "his extensive knowledge and experience with ski patrol equipment and mountain terrain safety." *See* Plaintiff's

---

[2]During the hearing on October 20, 2011, counsel for Defendant BOEC advised the court that his client was not challenging Mr. Hawkins''s qualifications or opinions regarding knots, but would object to the extent Plaintiff's counsel seeks to elicit or Mr. Hawkins' attempts to offer opinions at trial regarding adaptive skiing and the adaptive skiing industry.  Certainly, nothing in Mr. Hawkins' background would suggest he is qualified to opine on the latter subjects.  I suggested, with counsels' concurrence, that the scope of Mr. Hawkins' trial testimony might better be addressed through a motion *in limine* in advance of trial.

Response to Defendant Mountain Man, Inc.'s Motion to Exclude (doc. #102), at 9 and 11. As for the reliability of Mr. Gale's methodology, Plaintiff insists that his "opinions are based on sound principles" and reflect a "side-by-side comparison of two similar products: the ski patrol toboggan as manufactured by Cascade, and the bi-ski as manufactured by Mountain Man." *Id.* at 14. Notably, however, Plaintiff's brief never identifies or analyzes Mr. Gale's "sound principles," but merely parrots the expert's conclusory assertions.

BOEC's motion raises very similar arguments, suggesting that Mr. Gale's background in ski safety and ski accident reconstruction is limited to alpine skiing and does not qualify him to offer expert opinions relating to adaptive skiing standards or practices. While acknowledging Mr. Gale's "Level I Alpine Certification," Defendant BOEC contends that Mr. Gale's lack of "specialized knowledge in the area of adaptive skiing" leaves him wholly unqualified and calls into question any opinions he might offer regarding Ms. Phillips, Mr. Trisler, and BOEC. *See* BOEC's Motion to Strike and/or Limit Plaintiff's Experts (doc. #88), at 25.

In response, Plaintiff insists that Mr. Gale's opinions will assist the jury. Plaintiff argues that Mr. Gale's accumulated experience as a ski instructor and ski patrol member, coupled with his Level I Alpine certification, qualifies him to offer expert opinions on ski terrain selection, methods for guiding incapacitated individuals down off a mountain using a sled, and the use of knots in context of skiing-related activities. *See* Plaintiff's Response to Defendant BOEC's Motion to Strike and/or Limit Plaintiff's Experts (doc. #97), at 12-13.

This court held a *Daubert* hearing on October 20, 2011, at which time the court received testimony from Mr. Gale and Ruth Ann DeMuth, an expert in the field of adaptive skiing proffered by Defendant BOEC, as well as related exhibits. In discharging its obligations under

Fed. R. Evid. 702, the court has considered this information, as well as the legal arguments presented in the parties' briefs and during the October 20 hearing.

Rule 702 of the Federal Rules of Evidence provides that:

If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise.

By its very terms, Rule 702 imposes three requirements for the admission of expert testimony.  First, the expert must be qualified by specialized knowledge, skill, experience, training or education to testify on the subject matter of his or her testimony.  Second, the testimony must be "'based upon sufficient facts or data,' 'the product of reliable principles and methods;' and the product of the reliable application of these principles and methods to the facts of the case." *Cook v. Rockwell International Corp.*, 2006 WL 3533049, at *3 (D. Colo. 2006). *Cf. McHenry v. Icon Health & Fitness, Inc.*, 2001 WL 487949, at *3 (D. Kan. 2001) (Rule 702 "admits expert opinion testimony 'if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case'").  Finally, the proffered expert testimony must be relevant to an issue in the case and thereby assist the jury in its deliberations.  The district court performs an important gatekeeping function in assuring that each of these prerequisites is satisfied.[3]  *Macsenti v. Becker*, 237 F.3d 1223, 1230-34 (10th Cir. 2001).

---

[3]In performing its "gatekeeper" function under *Daubert*, 509 U.S. at 579, this court is not required to conduct an evidentiary hearing.  Rather, there must be "a sufficiently developed record in order to allow a determination of whether the district court properly applied the relevant law." *United States v. Nichols*, 169 F.3d 1255, 1262 (10th Cir. 1999) (holding that the trial court did not abuse its discretion when it declined to hold a preliminary evidentiary hearing, where the challenged evidence did not involve any new scientific theory or novel testing methodologies).

However, in discharging its gatekeeper responsibilities, this court remains mindful that "[g]enerally, 'rejection of expert testimony is the exception rather than the rule." *United States v. Nacchio*, 519 F.3d 1140, 1154 (10th Cir. 2008), *vacated in part on rehearing en banc*, 555 F.3d 1234 (10th Cir. 2009).

The proponent of expert testimony has the burden of establishing the admissibility of the expert's opinions under Rule 702 by a preponderance of the evidence. *In re Breast Implant Litigation*, 11 F. Supp.2d 1217, 1222 (D. Colo. 1998). *See also Oddi v. Ford Motors Co.*, 234 F.3d 136, 144 (3rd Cir. 2000) (proponent of expert testimony must satisfy Rule 702 requirements by preponderance of proof). The decision to admit or exclude expert testimony is reviewed for abuse of discretion. *Summers v. Missouri Pacific Railroad System*, 132 F.3d 599, 603 (10th Cir. 1997). *Cf. Truck Insurance Exchange v. Magnetek, Inc.*, 360 F.3d 1206, 1210 (10th Cir. 2004) ("The trial court is afforded substantial deference in its application of *Daubert*. Therefore, we will only disturb the trial court's decision if we have a 'definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances.'").

Rule 702 does not impose an "overly rigorous" requirement of expertise, recognizing that specialized knowledge may be acquired through a broad range of experience, skills or training. *See United States v. Velasquez*, 64 F.3d 844, 849 (3rd Cir. 1995). The trial court should not exclude expert testimony simply because the court feels that the proffered witness is not the most

---

*See also Daubert*, 509 U.S. at 592 n.10. (courts retain "broad discretion . . . both in deciding how to assess an expert's reliability, including what procedures to utilize in making that assessment, as well as in making the ultimate determination of reliability").

qualified or does not have the specialization considered most appropriate by the court. *See Holbrook v. Lykes Brothers Steamship Co., Inc.*, 80 F.3d 777, 782 (3rd Cir. 1996). *Cf. Wooley v. Smith & Nephew Richards, Inc.*, 67 F. Supp.2d 703, 706-07 (S.D. Tex. 1999) (finding that the proffered medical expert had a "modest degree of specialized knowledge applicable to the claims made in this case").

However, the "qualification" element of Rule 702 is not insignificant and must be satisfied as an essential prerequisite for the admissibility of the expert's opinions. "[T]he witness is 'required to possess' such skill, experience or knowledge in that particular field as to make it appear that his opinion would rest on substantial foundation and would aid the trier of fact in his search for truth.'" *Markham v. BTM Corp.*, 2011 WL 1231084, at *16 (D. Kan. 2011) (quoting *Life Wise Master Funding v. Telebank,* 374 F.3d 917, 928 (10th Cir. 2004)). The Tenth Circuit has acknowledged that a lack of specialization will not affect the admissibility of an expert's opinions "[a]s long as [the] expert stays 'within the reasonable confines of his subject area.'" *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969 (10th Cir. 2001) (quoting *Wheeler v. John Deere Co.*, 935 F.2d 1090, 1100 (10th Cir. 1991)).

The court understands that Mr. Gale has been accepted as an expert witness in other cases. However, "[t]he fact that a person spends substantially all of [his] time consulting with attorneys and testifying at trials is not a disqualification, but it is not an automatic qualification guaranteeing admission of expert testimony." *Tokio Marine & Fire Insurance Co. v. Grove Manufacturing Co.*, 762 F. Supp. 1016, 1018 (D. P.R. 1991). "With respect to the qualification prong, it is not sufficient that the witness has qualified as an expert in the past." *BancFirst v. Ford Motor Co.,* 2011 WL 2215014, at *2 (W.D. Ok. 2011).

> This is because "when assessing expert testimony, 'the question before the trial court [i]s specific, not general.'"  "The issue with regard to expert testimony is not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question."

*Id.* (quoting *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994)) (internal citations omitted).  *See also Paris v. Ford Motor Co.*, 2007 WL 4967217, at *5 (D.N.M. 2007) ("an expert must be qualified to opine regarding the specific issues raised in [the] case").

A.      Mr. Gale's Opinions Regarding Defendant Mountain Man

After carefully reviewing Mr. Gale's expert report and his professional background, I conclude that Mr. Gale lacks sufficient knowledge, skill, experience, training or education to qualify as an expert in the areas of product design and manufacture, and product warnings and labeling.  *Cf. Magoffe v. JLG Industries, Inc.*, 2008 WL 2967653, at *22  (D.N.M. 2008) (in holding that plaintiffs' expert's opinions were inadmissible in the pending products liability action, noted that a witness' general credentials as an engineer do not qualify him or her to offer expert opinions about the adequacy of product warnings or directions, unless he or she can demonstrate other specialized knowledge regarding the communication of warnings).

Mr. Gale has never been employed by a company that designs or manufactures ski equipment for disabled skiers, and apparently has never designed an adaptive ski himself.  Mr. Gale's *curriculum vita* does not list any formal training in the areas of product design, manufacture or risk assessment.  There is no indication that Mr. Gale has ever written or designed product warning labels or instructions. To the extent this witness' proffered opinions on product design, manufacture and warnings fall well outside his area of expertise, those unqualified opinions could not assist the jury as required by Rule 702.  As one court has noted

9

> [T]o testify that a challenged product is defectively designed . . . [t]he expert
> [must] be qualified to testify that the utility of the alternative design outweighs the
> utility of the challenged design, and that use of an alternative design would have
> eliminated or reduced the injuries suffered.  To be qualified to evaluate the utility
> of a design, the witness must be proficient at evaluating such factors as the
> intended use of the product, its styling, cost, and desirability, its safety aspects, the
> foreseeability of the particular accident, the likelihood of injury, and the probable
> seriousness of the injury if that accident occurred, the obviousness of the defect,
> and the manufacturer's ability to eliminate the defect.

*Beam v. McNeilus Truck and Manufacturing, Inc.*, 697 F. Supp. 2d 1267, 1276 (N.D. Ala. 2010).

There is no evidence to suggest that Mr. Gale has this requisite skill set.  Accordingly, I must

find that Mr. Gale does not meet the "qualifications" prong under Rule 702 and may not offer

opinions regarding product design, manufacture or warning labels relative to the FFS Dual Ski.

The lack of appropriate qualifications necessitates the granting of Defendant Mountain

Man's motion to exclude.  However, as an alternative ground for granting the requested relief, I

also find that Mr. Gale's challenged opinions fail to satisfy Rule 702's "reliability" requirement.

Although an expert witness is permitted wide latitude in offering opinions, including

those which are not based on first-hand knowledge or observation, the opinions must have a

reliable basis.  Under Rule 702, admissible expert testimony must be based on "actual knowledge

and not 'subjective belief or unsupported speculation.'"  *Mitchell v. Gencorp, Inc.*, 165 F.3d 778,

780 (10th Cir. 1999); *Wilson v. Petroleum Wholesale, Inc.*, 904 F. Supp. 1188, 1190 (D. Colo.

1995).

> In addressing the principles enunciated in *Daubert*, the Tenth Circuit has recognized
> proposed expert testimony must be supported by "appropriate validation – *i.e.,*
> 'good grounds,' based on what is known," . . . The plaintiff need not prove that
> the expert is indisputably correct or that the expert's theory is "generally
> accepted" in the scientific community.  Instead, the plaintiff must show that the
> method employed by the expert in reaching the conclusion is scientifically sound
> and that the opinion is based on facts which sufficiently satisfy Rule 702's

10

reliability requirements.

Mitchell, 165 F.3d at 781.  Regardless of whether the expert is basing his or her opinions upon professional studies or personal experience, the expert must "employ in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Hollander v. Sandoz Pharmaceutical Corp.*, 289 F.3d 1193, 1205-06 (10th Cir. 2002) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)).  "All proffered expert testimony must be properly grounded, well-reasoned, and not speculative before it may be admitted." *First Specialty Insurance Corp. v. Ward North America Holdings, Inc.*, 2006 WL 6225115, at *1 (D. Kan. 2006).

No single factor should be considered dispositive in weighing the reliability of an expert's opinions. *Ruiz-Troche v. Pepsi Cola of Puerto Rico*, 161 F.3d 77, 85 (1st Cir. 1998).[4] Ultimately, the court's inquiry must focus on three areas:  (1) whether the expert's testimony is based on sufficient facts or data; (2) whether the expert used reliable principles and methodologies; and (3) whether the expert applied these principles and methods reliably to the facts of the case.  *Cook*, 2006 WL 3533049 at *7.  *Cf. Bonner v. ISP Technologies, Inc.*, 259 F.3d 924, 929 (8th Cir. 2001) (quoting *Heller v. Shaw Industries*, 167 F.3d 146, 152-53 (3rd Cir. 1999)) ("[E]ven if the judge believes there are better grounds for some alternative conclusion, and that there are some flaws in the scientist's methods, if there are good grounds for the expert's

---

[4]In assessing the reliability of a proffered opinion, the trial court may consider, *inter alia*: (1) whether the opinion is susceptible to testing and has been subjected to such testing; (2) whether the opinion has been subjected to peer review; (3) whether there is a known or potential rate of error associated with the methodology used and whether there are standards controlling the technique's operation; and (4) whether the theory has been accepted in the scientific community.  *Hollander*, 289 F.3d at 1205.

conclusion, it should be admitted.").

In this case, I find that Mr. Gale has not presented "good grounds" for his opinions relative to Defendant Mountain Man. Mr. Gale's January 3, 2011 report identifies no formal methodology underlying those opinions. Indeed, a careful review of Mr. Gale's 12-page report reveals very few references that seem to be directed in any way to the specific claims against Defendant Mountain Man. For example, in Section 1.11 of his report, Mr. Gale states that he reviewed unspecified "Bi-ski Forensic Photographs," "Photographs of Miss Squires on the bi-ski at BOEC," "Two pages describing various [unidentified] manufactured mono, bi, and dual skis," and the "Mountain Man [FFS] Dual Ski Brochure."[5] Elsewhere in the report, Mr. Gale states that Ms. Phillips "never received any training or instruction from Mountain Man." The January 3, 2011 report then opines,

4.1   With regards to Mountain Man:

- Without any safety warning, instructional booklet, video, or onsite safety training or on snow demonstration workshop, BOEC was apparently left to establish its own safety procedures for using the bi-ski. It was feasible and practical for Mountain Man to provide the aforementioned.
- There was no "dead man's" safety breaking device such as found on ski patrol toboggans and other equipment used as ski areas.

In the "Summary" portion of his report, Mr. Gale concluded, in pertinent part, that

5.1   Mountain Main, as a national supplier for adaptive sports centers, was in a position that it knew or should have known that if the bi-ski with fixed outriggers became free and detached from the instructor, there was a

---

[5]Apparently, Mr. Gale also reviewed unidentified materials on "Wikipedia." *But see Jones v. Synthes USA, LLC*, 2010 WL 3311840, at *6 n.7 (D.N.J. 2010) ("Wikipedia is a free web-based encyclopedia written by individuals from all around the world. According to the website, almost all of its articles can be edited by anyone accessing the site which places its reliability and accuracy in question.")

> serious and dangerous potential for injury to the skier and the public.
> There was no justifiable excuse to sell and distribute the bi-ski without
> instructions for safe tethering or without some sort of braking device
> which would be controlled by the person strapped into the bi-ski.  The
> plastic buckle system was inherently unsafe and not designed for powerful
> forces.  These were the "quick release" type and not suitable safety buckles
> such as the standard metal restraints used in vehicles.  It did not provide
> training for its unique and multi-faceted product.

The January 3, 2011 report is devoid of any analysis or methodology that would link the

pertinent materials reviewed to the opinions and conclusions directed toward Defendant

Mountain Man.  Under Rule 702, admissible expert testimony must be based on "actual

knowledge and not 'subjective belief or unsupported speculation.'"  For example, Mr. Gale's

report notes that "all of the plastic buckles on the bi-ski seat broke" upon impact with the tree

and then summarily concludes, without any explanation or testing, that "the plastic buckle system

was inherently unsafe and not designed for powerful forces."  *But see In re Trasylol Products*

*Liability Litigation*, 709 F. Supp. 2d 1323, 1346 (S.D. Fla. 2010) (finding that a proffered expert

that merely "regurgitates" facts and then reaches conclusory opinions assumes the role of

advocate and invades the province of the jury).  *See also United States v. Frazier*, 387 F.3d 1244,

1261 (11th Cir. 2004) ("[I]t remains a basic foundation for admissibility that the '[p]roposed

[expert] testimony must be supported by appropriate validation'").

Similarly, Mr. Gale alludes to the possibility of "some sort of braking device which could

be controlled by the person strapped into the bi-ski," without further elaboration or technical

analysis.  Yet, "[i]f a plaintiff proposes an alternative design or an alternative warning, . . . he

may not merely rest on the expert's proposal.  Plaintiff must show that the alternative design or

warning is feasible, adequate and effective."  *McHenry*, 2001 WL 487949, at *5.  In cases

13

alleging product design defects, the absence of alternative design testing is particularly

significant for purposes of the Rule 702 gatekeeping function where the proffered expert has not

utilized any other methodology.  *See Magoffe*, 2008 WL 2967653, at *20 and cases cited therein.

> Testing an alternative design can assist a proposed expert in considering (1) the
> alternative's compatibility with existing systems, (2) relative efficiency of the
> current versus alternative design, (3) short and long term maintenance costs for
> the alternative design, (4) ability of the proposed purchaser to service and
> maintain the alternative design, (5) cost of installing the alternative design, and (6)
> change in cost of the machine.

*Id.* at *21.

Mr. Gale's report does not set out the specifications for his alternative braking system,

demonstrate how an alternative braking system would be feasible from a manufacturing or cost

perspective, or explain how that braking system could have been employed by a passenger with

Ms. Squires' physical impairments.  *Cf. Early v. Toyota Motor Corp.*, 277 Fed. Appx. 581, 586

(6th Cir. 2008) (in excluding plaintiffs' products liability expert, the trial court noted that the

expert "did not offer any alternative design" and did not "run any experiments or test to

determine whether some alternative would have performed better under any set of conditions").

Quite simply, there is an obvious and untenable analytical gap between the materials Mr. Gale

reviewed and the opinions he proposes to offer against Defendant Mountain Man.  Plaintiff

cannot bridge that gap merely by offering "the *ipse dixit*" of her own expert.  *Cf. GE v. Joiner*,

522 U.S. 136, 146 (1997).  *See also First Specialty Insurance Corp. v. Ward North America*

*Holdings, Inc.*, 2006 WL 6225115, at *1 (D. Kan. 2006) (noting that a trial court's gate-keeping

function requires more than simply "taking the expert's word for it").

Mr. Gale's lack of any reliable basis for his "alternative braking design" opinion is

apparent in the following exchange that occurred during his deposition on April 1, 2011,

approximately three months after Mr. Gale unequivocally found "no justifiable excuse to sell and

distribute the bi-ski . . . without some sort of braking device which would be controlled by the

person strapped into the bi-ski."

> Q.      So you would have no idea how feasible such an idea might be to incorporate it on a bi-ski such as the Mountain Man FFS dual ski, do you?
>
> A.      Well, I do have an idea.  I think that a design team of product specialists could come up with something to incorporate that existing technology into the skis that are already there.
>
> Q.      And how could they do that?
>
> A.      Well, I'm telling you that we have technology to stop and retard skis.  We already possess that.  There are pneumatic devices, there are buttons, there are cables such as hand brakes of cars – excuse me, of bicycles.  I'm saying that the – something that a design team could look at and go forward with that.

*   *   *

> A.      . . . I think that would be best left up to design teams to research, develop and testing, to explore that possibility.  I do know there are other type of adaptive skis that have braking systems.
>
> Q.      And what type of adaptive skis that have braking systems are you aware of?
>
> A.      Let's see if I have –
>
> Q.      Let's talk about the Tessier tandem.  That's the only one I'm aware of.
>
> A.      There is that, then there is in – apparently, according to the Adaptive Sports Manual, fixed outriggers – pardon me, nonfixed outriggers have a bolt in part of the outrigger that is not fixed to retard the velocity of the skier using the outrigger.  So I would think that the scientists and designers could come up with something to bridge that gap.

*   *   *

15

Q.      And before I move on to the next area, do you have any opinion with respect to how a braking device such as contained on the Tessier tandem device would operate on an FFS dual ski?

A.      No.

Q.      Because that is a pretty completely different device, isn't it, the Tessier tandem?

A.      It looks to be a different device.

*See* Deposition Testimony of Stanley Gale, dated April 1, 2011, attached as Exhibit L to BOEC's Motion to Strike Untimely Opinions by Plaintiff's Experts Bill Hawkins and Stanley Gale (doc. 106).[6] *Cf. Masterson Marketing, Inc. v. KOL Recreation Corp.*, 495 F. Supp. 2d 1044, 1051 (S.D. Cal. 2007) (criticizing an expert report that offered nothing more than conclusions based on incomplete suppositions); *Chirco v. Charter Oak Homes, Inc.*, 2003 WL 25697322, at *2 (E.D. Mich. 2003) (holding that expert testimony should be excluded if it is speculative, conjectural or based on assumptions "so unrealistic and contradictory as to suggest bad faith"); *Bethea v. Bristol Lodge Corp.*, 2002 WL 31859434, at *8 (E.D. Pa. 2002) (excluding an expert's proffered opinion that represented nothing more than a conclusory statement).

It seems quite apparent that Mr. Gale's design opinions reflect nothing more than his subjective belief that unknown individuals with actual qualifications could "come up with something." *But see Cf. Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003) (noting that "expert opinions 'must be based on facts which enable [the expert] to express a reasonably accurate conclusion as opposed to conjecture or speculation'"); *Abold v. City of Black Hawk*,

_____

[6]This court may take judicial notice of documents in the public record, including the court's own docket. *See, e.g., State Farm Mutual Automobile Insurance Co. v. Boellstorff*, 540 F.3d 1223, 1126 no.7 (10th Cir. 2008).

2005 WL 5807816, at *3-4 (D. Colo. 2005) (excluding a proffered expert whose proposed opinions were "in essence, a subjective belief consisting of unsupported speculation that [was] not tied to the facts of the case").  While doubts whether an expert's testimony will be useful generally should be resolved in favor of admissibility, such testimony should be excluded when the opinion "is so fundamentally unsupported that it can offer no assistance to the jury."  *Hose v. Chicago Northwestern Transportation Co.*, 70 F.3d 968, 974 (9th Cir. 1996).

Mr. Gale also opines that Defendant Mountain Man should have provided some "safety warnings, instructional booklet, video, or onsite safety training or on snow demonstration workshop," as well as "instructions for safe tethering."  Notably, however, Mr. Gale's report does not specify the warnings or instructions that he would deem acceptable and apparently Mr. Gale did not conduct any risk assessment to validate his proposals.  At a minimum, Mr. Gale must be able to substantiate his opinions and cannot rely solely on an ultimate conclusion.  *Cf. Magoffe*, 2008 WL 2967653, at *21 (suggesting that to be admissible under Rule 702, "it is not enough to simply conceive of an additional warning or directive;" an expert "should not only identify an additional warning or direction, but also provide a reliable explanation of how this additional warning or direction would be read and understood by users in the context presented by the existing warnings and directions").  *See also Edison Wetlands Association, Inc. v. Akzo Nobel Chemicals, Inc.*, 2009 WL 5206280, at *2 and 5 (D.N.J. 2009) (noting that a court must examine the expert's conclusions in order to determine whether they could reliably flow from the facts known to the expert).  *Cf. Fanning v. Sitton Motor Lines, Inc.*, 2010 WL 4261476, at *7 (D. Kan. 2010) ("to satisfy the strictures of *Daubert*, an expert may not base his or her testimony upon assumptions that are not supported by the evidence").

The cursory nature of Mr. Gale's January 3, 2011 report, at least as it relates to the Mountain Man bi-ski, leads this court to the inescapable conclusion that the opinions directed to Defendant Mountain Man were prepared solely for purposes of this litigation and without any thought to the required elements under Rule 702. *Cf. Wehling v. Sandoz Pharmaceuticals Corp.*, 162 F.3d 1158, at *3 (4th Cir. 1998) ("Another significant fact weighing against admitting the testimony is where, as here, the expert developed his opinions expressly for the purposes of testifying.").

B.     Mr. Gale's Opinions Regarding Defendant BOEC

Defendant BOEC's challenge to Mr. Gale's expert testimony stands on a different footing.  Distilled to its essence, Defendant's motion argues that Mr. Gale's qualifications are limited to alpine skiing and fall well below the level of experience with adaptive skiing attained by BOEC's own retained expert, Ruth DeMuth.  To the extent that Mr. Gale's opinions regarding adaptive skiing protocols and teaching techniques extrapolate from his experience as an alpine skiing instructor and his ski patrol service, BOEC suggests those opinions are inherently unreliable because they are squarely at odds with Ms. DeMuth's own assessment.  *Cf. Milne v. USA Cycling Inc.*, 575 F.3d 1120, 1133-34 (10th Cir. 2009).

Plaintiff argues, to the contrary, that Rule 702 does not establish a particularly rigorous standard for establish an expert's qualifications, and that Mr. Gale's years of experience (albeit in alpine rather than adaptive skiing) qualify him to render opinions on skiing safety and the selection of appropriate terrain for ski instruction.

One example illustrates the parties' divergent positions.  In his January 3, 2011 report, Mr. Gale concluded that Ms. Phillips intentionally violated teaching protocols established by the

Professional Ski Instructors of America (PSIA) when she started Ms. Squires' bi-ski instruction on more difficult blue ski trails.  According to Mr. Gale, Ms. Phillips

> willfully and recklessly compromised the safety of Miss Squires by selecting more difficult ski terrain rather than a proper beginner trail and by doing so created the risk to the first time skier, Miss Squires.  She intentionally elected to ski the bi-ski into a more dangerous area. . . . Proper terrain choice is absolutely fundamental to providing reasonably safe instruction to all skiers in lessons.  Skiing techniques and the progression of the development building blocks are always taught and introduced on easy trails before they are applied to more challenging more difficult terrain. . . . To practice otherwise is a reckless disregard for the safety of the ski student.

Unlike his *ipse dixit* opinions directed toward Defendant Mountain Man, Mr. Gale's anticipated testimony regarding BOEC draws upon his first-hand knowledge of all the ski trails at Breckenridge Ski Area, his experience as a Level I Alpine Ski instructor, and his background as a ski patrol member.  Based on this experience and his review of pertinent publications, Mr. Gale concludes that alpine and adaptive skiing share an incremental approach to instruction linked to the capabilities of a particular student.  As further support for his opinions, Mr. Gale cites the *Adaptive Information Guide* for bi-ski instruction prepared by PSIA-Rocky Mountain Region, which purports to be "based on the PSIA Alpine National Standards" and speaks of starting a novice bi-skier on "Green Terrain."  As part of his investigation in this case, Mr. Gale claims that he personally observed BOEC instructors with bi-skiers on the gentler inclines that characterize green runs near the Quicksilver Lift at the Breckenridge Ski Area.  Finally, Mr. Gale notes the deposition testimony of  Paul Gamber, BOEC's Director of Operations, who acknowledged that a first-time student with Ms. Squire's physical limitations "would start on a beginning run" and would "have to take a green run."  It is undisputed that on February 13, 2008, Ms. Squires never received any experience on a green run before being taken down the Bonanza and later the

19

Cashier blue trails.

Ms. DeMuth, on the other hand, takes the position that Ms. Phillip's actions on February 13, 2009 were wholly consistent with established adaptive skiing instruction protocols. Based on her 22 years of experience teaching alpine and adaptive skiing and the ten years she spent as the ski-school program manager for the Vail Adaptive Ski Program, Ms. De Muth opines that "[d]ue to the individual needs of each adaptive skier and the various types of special equipment used, the adaptive skiing progression or skiing ability does not necessarily follow the standard step-by-step progression from Level 1 to Level 7 as is true with alpine skiers. . . . In the case of a bi-ski, the progression moves rapidly because the bi-ski with fixed outriggers is designed to ski parallel and work with gravity." *See* Affidavit of Ruth DeMuth, at ¶22, attached as Exhibit D (doc. #88-3) to Defendant BOEC's Motion to Strike and/or Limit Plaintiff's Experts. According to BOEC's expert, Ms. Phillips' decision to take her student down the Cashier blue trail did not compromise Ms. Squires' safety. Ms. DeMuth insists that Mr. Gale's contrary opinions reflect his lack of "the most basic understanding of the adaptive ski equipment that was being used at the time of the subject accident" and a misapplication of his alpine skiing experience to the facts of this case. *Id.* at ¶25.

For purposes of the instant Order, I am not required to choose between Mr. Gale's and Ms. DeMuth's conflicting opinions regarding terrain selection, for the court's "gatekeeping" responsibilities under Rule 702 do not turn on the "correctness" of an expert's opinions. *See Cook*, 580 F. Supp. 2d at 1085 (noting that a party offering evidence under Rule 702 is not required to prove that the expert is "indisputably correct;" expert evidence "can be 'shaky' and yet still admissible"). *Cf. Potoski v. Wilkes University*, 2010 WL 3811973, at *6 ("In performing

its gate-keeping function, the court does not weigh the evidence relied upon by an expert or

determine whether it agrees with the expert's conclusions."). "Doubts about whether an expert's

testimony will be useful should generally be resolved in favor of admissibility unless there are

strong factors such as time or surprise favoring exclusions." *Cook,* 580 F. Supp. 2d at 1083

(quoting *Robinson v. Mo. Pac. R.R. Co.*, 16 F.3d 1083, 1090 (10th Cir. 1994)).

> As a general rule, the factual basis of an expert opinion goes to the credibility of
> the testimony, not the admissibility, and it is up to the opposing party to examine
> the factual basis for the opinion in cross examination.  Only if the expert's opinion
> is so fundamentally unsupported that it can offer no assistance to the jury must
> such testimony be excluded.

*Bonner*, 259 F.3d at 929-30.  *Cf. Primrose Operating Co. v. National American Insurance Co.*,

382 F.3d 546, 562 (5th Cir. 2004) ("It is the role of the adversarial system, not the court, to

highlight" questions relating to the bases and sources of an expert's opinions); *Biomet*

*Orthopedics, Inc. v TACT Medical Instruments, Inc.*, 2004 WL 5499505, at \*4 (D. Kan. 20004)

(acknowledging that the court's role as gatekeeper is not to serve as a substitute for the adversary

system).

　　　While BOEC is disinclined to place any weight on Mr. Gale's anticipated opinions, any

perceived weaknesses in that testimony are better explored through cross-examination and during

counsel's closing argument at trial.  *See Daubert*, 509 U.S. at 596 ("vigorous cross-examination,

presentation of contrary evidence, and careful instruction on the burden of proof are the

traditional and appropriate means of attacking shaky but admissible evidence").  *Cf. Paradigm*

*Alliance, inc. v. Celeritas Technologies,LLC*, 2009 WL 3855677, at \*3 (D. Kan. 2009) (holding

that defendant's challenges directed to the validity of plaintiff's expert's assumptions go to the

weight of the expert's opinions rather than admissibility under Rule 702).  The court should not

exclude Mr. Gale's opinions simply because BOEC and its retained expert disagree with his analysis. *Cf. Synergetics, Inc. v. Hurst*, 477 F.3d 949, 955 (8th Cir. 2007) ("As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination."); *In re MDL-731 Tax Refund Litigation*, 989 F.2d 1290, 1299 (2d Cir. 1993) (holding that the trial court properly admitted expert testimony regarding property valuations; noting that defendants had "ample opportunity during cross-examination to explore any subjective considerations underlying the experts' appraisals and to cast doubt on the reliability of those appraisals"). This court cannot conclude that Mr. Gale's opinions regarding the selection of appropriate terrain for Ms. Squires' bi-ski lesson is so fundamentally unsound that they would not assist the jury.

Accordingly, for the foregoing reasons, Defendant Mountain Man, Inc.'s Motion to Exclude Plaintiff's Expert Testimony Pursuant to F.R.E 702 (doc. #87) is GRANTED, and Mr. Gale will be precluded from offering at trial any expert opinions relating to the design or manufacture of the FFS Dual Ski, or any opinions relating to warning labels or instructions pertaining to that same product. Defendant BOEC's Motion to Strike and/or Limit (doc. #88) Mr. Gale's opinions is DENIED.

II.       *Mountain Man's Motion for Summary Judgment*

In moving for summary judgment, Defendant Mountain Man presents two alternative arguments: first, that Plaintiff's claims are barred by the two-year statute of limitations set forth in C.R.S § 13-80-106(1) and second, that Ms. Squires cannot present sufficient evidence to

establish a *prima facie* case of product liability, particularly given the statutory presumption established by C.R.S. § 13-21-403 and Plaintiff's misplaced reliance upon Mr. Gale's "expert" opinions.

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(c)(2).  *See also Devery Implement Company v. J.I. Case Company,* 944 F.2d 724, 726 (10th Cir. 1991); *Redmon v. United States*, 934 F.2d 1151, 1155 (10th Cir. 1991).  To meet the burden of persuasion required to support summary judgment under Rule 56, the movant must "point to those portions of the record that demonstrate an absence of a genuine issue of material fact, given the relevant substantive law."  *Thomas v. Wichita Coca-Cola Bottling Co.,* 968 F.2d 1022, 1024 (10th Cir. 1992) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986)).  A fact is "material" if under the substantive law it could have an effect on the outcome of the lawsuit.  *Equal Employment Opportunity Comm'n v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

While the moving party bears the initial burden of showing that there is an absence of any issues of material fact, *Hicks v. City of Watonga*, 942 F.2d 737, 743 (10th Cir. 1991), the movant need not negate the non-movant's claim.  *See John Hancock Mut. Life Ins. Co. v. Weisman*, 27 F.3d 500, 503 (10th Cir. 1994); *Universal Money Ctrs., Inc. v. American Tel. & Tel. Co.*, 22 F.3d 1527, 1529 (10th Cir. 1994).  Once the moving party points to an absence of evidence to support the non-moving party's claim, the non-moving party may not rest upon her pleadings, but must come forward with specific facts showing that there is a genuine issue for trial as to the elements

essential to the non-moving party's case.  *See* Fed. R. Civ. P. 56(e).  *See also Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010).

The court must construe the factual record and reasonable inferences therefrom in the light most favorable to the non-moving party.  *Kidd v. Taos Ski Valley, Inc.*, 88 F.3d 848, 851 (10th Cir. 1996).  The court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 251-52.  Evidence that is not significantly probative and immaterial factual disputes will not defeat a motion for summary judgment.  *Ayon v. Gourley*, 47 F. Supp. 2d 1246, 1252 (D. Colo. 1998).  The demonstration of "some metaphysical doubt as to the material facts" is not sufficient to establish a genuine issue of material fact.  *Foreman v. Richmond Police Department*, 104 F.3d 950, 957 (7th Cir. 1997).  "The very purpose of a summary judgment action is to determine whether trial is necessary."  *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995).

A.    Statute of Limitations

While Mountain Man concedes that Ms. Squires' original Complaint was timely filed, it argues that the newly added claims in the Amended Complaint were barred by the two-year statute of limitations established in C.R.S. § 13-80-106(1).  That statute provides, in pertinent part, that "notwithstanding any other statutory provisions to the contrary," actions brought against a manufacturer or seller of a product "shall be brought within two years after the claim for relief arises and not thereafter."  Here, it is undisputed that the incident involving Ms. Squires occurred on February 13, 2008 and that the Amended Complaint joining Defendant Mountain Man was not filed until April 15, 2010.  If Ms. Squires' claims against Mountain Man accrued on

24

February 13, 2008, then the claims against Mountain Man would be time-barred if not brought by February 13, 2010 or otherwise tolled.

At the time she sustained her injuries, Ms. Squires was a developmentally-delayed seventeen year old with her parents serving as her natural guardians.[7]  Colorado law provides that if, in an action brought against a manufacturer, the alleged victim "is under the age of eighteen years, [or] mentally incompetent . . . at the time the cause of actions accrues and is without *spouse or natural or legal guardian*, such person may bring said action within the time limit specified in this section after the disability is removed."  *See* C.R.S. § 13-80-106(2) (emphasis added).[8]  Given that Ms. Squires had natural guardians at the time of her accident, Mountain Man argues that Plaintiff was required to assert her claims on or before February 14, 2010, and her Sixth, Seventh, Eighth and Ninth Claims for Relief are barred by the statute of limitations.

Pertinent case law calls Defendant's analysis into question.  Colorado law does not impose upon a natural parent a legal duty to prosecute any personal injury claim on behalf of their minor child, "and consequently, . . . the knowledge of such parent cannot be imputed to that child." *Cintron v. City of Colorado Springs*, 886 P.2d 291, 293 (Colo. App. 1994).  *Cf.*

---

[7] Ms. Squires and her parents were in 2008 and continue to be Kansas residents.  Section 59-3051(l) of the Kansas Statutes Annotated defines "natural guardian" to include "both the biological or adoptive mother and father of a minor."  Rule 17(c) of the Federal Rules of Civil Procedure recognizes that a natural guardian has the right to sue on behalf of their minor child. *See, e.g., Mulready v. Mulready*, 2007 WL 1791120, at *1 (D. Conn. 2007).

[8]The Tenth Circuit noted in *Chuchuru v. Chutchurru*, 185 F.2d 62, 64 (10th Cir. 1950) that

> It is the settled law in Colorado that courts look with favor upon statutes of limitation and construe them liberally.  On the other hand, it is the well established general rule that exceptions to the operation of a statute of limitation which toll its running in favor of persons under disability are to be strictly construed and never extended beyond their plain import.

*Antonopoulos v. Town of Telluride*, 532 P.2d 346, 350 (Colo. 1975) (noting that a minor child's "next friend is not a real party in interest, but rather a mere aid to the minor's assertion of his rights against the defendants . . . it is clear that the next friend's action or inaction in commencing the suit cannot prejudice the minor's rights").   In the absence of any mental disability, Ms. Squires would not have been competent to file a lawsuit in her own right prior to reaching the age of 18.   *Cf. Hane By and Through Jabalera v. Tubman*, 899 P.2d 332, 336 (Colo. App. 1995).   Here, the Amended Complaint asserting claims against Mountain Man was filed on April 15, 2010, less than two years after Ms. Squires' eighteenth birthday and the removal of any age-based disability.

Alternatively, Ms. Squires mental impairment (which continues to the present) qualifies as an independent disability for purposes of the statute of limitations.   For a brief period of time, from April 19, 2008 to May 14, 2008, Ms. Squires was a mentally disabled adult without a spouse, natural or legal guardian and, therefore, subject to the tolling provision in C.R.S. § 13-80-106(2).   Plaintiff's parents became their daughter's legal guardian on May 14, 2008 (well within the two-year statute of limitations) and continue to serve as her legal guardians today. C.R.S. § 13-81-103(a) provides, in pertinent part, that

> [I]f a legal representative is appointed for [a] person under disability at any time after the right [of action] accrues and prior to the termination of such disability, the applicable statute of limitations shall run against such person under disability in the same manner, for the same period, and with the same effect as it runs against persons not under disability.   Such legal representative . . . in any event shall be allowed not less than two years after his appointment within which to take action on behalf of such person under disability, even though the two-year period expires after the expiration of the period fixed by the applicable statute of limitations.

In *Elgin v. Bartlett*, 994 P.2d 411, 414 (Colo. 1999), the Colorado Supreme Court held

that the definition of "'legal representative' does not include natural parents or next friends acting on behalf of a minor."  Citing its earlier holding in *Southard v. Miles*, 714 P.2d 891 (Colo. 1986), the Colorado Supreme Court in *Tenney v. Flaxer*, 727 P.2d 1079, 1085 (Colo. 1986), held that section 13-81-103(1) was controlling in a case where the putative plaintiff was both a minor and mentally impaired, notwithstanding potentially conflicting language in the medical negligence statute of limitations.  *See also Persichini v. Brad Ragan, Inc.*, 735 P.2d 168, 172-73 (Colo. 1987) ("In the absence of a clear expression of legislative intent to the contrary, a statute of limitations specifically addressing a particular class of cases will control over a more general or catch-all statute of limitations.").  Under the circumstances of the instant case, I see no reason to depart from the analysis set forth in *Tenney.*  Ms. Squires' parents were appointed her legal guardians on May 14, 2008 and were required to bring the claims against Mountain Man on or before May 14, 2010.  They did and, therefore, Defendant's Motion for Summary Judgment must be denied to the extent Mountain Man seeks to assert an affirmative defense based upon the statute of limitations.

  B.  <u>Plaintiff's Prima Facie Case</u>

  For purposes of Defendant Mountain Man's pending motion, the following facts are material and apparently undisputed.

  On February 13, 2008, Ms. Squires was riding in an FFS Dual Ski designed and manufactured by Defendant Mountain Man, Inc.  *See* Plaintiff's Response to Defendant Mountain Man's Motion for Summary Judgment (doc. #68), at 4. This bi-ski was sold by Mountain Man to BOEC in 1994, some fourteen years before the incident involving Ms. Squires. *See* Exhibit F attached to Defendant Mountain Man's Supplemental Memorandum Brief (doc.

#78).  The FFS Dual Ski was warranted as fit for use by quadriplegics and people with cerebral

palsy, and marketed by Mountain Man as a "Full Featured System" Dual Ski for the Physically

Challenged.  *See* Plaintiff's Response to Defendant Mountain Man's Motion for Summary

Judgment (doc. #68), at 4.  Mountain Man sold the FFS Dual Ski with a pledge to repair or

replace any broken components, but without any express warranty.  *See* Defendant Mountain

Man's Supplemental Memorandum Brief (doc. #78), at 4.  The FFS Dual Ski with fixed

outriggers utilized safety straps with plastic buckles, but was designed without a safety brake or

mechanical braking system.  *See* Plaintiff's Response to Defendant Mountain Man's Motion for

Summary Judgment (doc. #68), at 5. The adaptive ski instructor was linked to the bi-ski with

tethers.  *See* Plaintiff's Response to Defendant Mountain Man's Motion for Summary Judgment

(doc. #68), at 3.  It also appears to be undisputed that since 2000, a bi-ski with a safety brake

manufactured by Tessier (the "Tandemnski') has been in the marketplace.  *See* Plaintiff's

Response to Defendant Mountain Man's Motion for Summary Judgment (doc. #68), at 5.  The

parties strenuously dispute whether the Mountain Man bi-ski was a defective or unsafe product.

　　　To establish her claims against Mountain Man for strict liability and negligence, Ms.

Squires has the burden of proving by a preponderance of the evidence that the FFS Dual Ski

involved in the February 13, 2008 incident was defective.  *Cf. Mile Hi Concrete, Inc. v. Matz*,

842 P.2d 198, 205 (Colo. 1992).  Plaintiff's Seventh Claim for breach of implied warranty

specifically alleges that the equipment manufactured by Mountain Man and sold to BOEC was

"unfit, unsafe and not useable" for the intended purpose.  Similarly, Plaintiff's Eighth Claim for

breach of express warranty contends that the FFS Dual Ski was not safe and fit for its intended

purpose.

> "Strict liability is not absolute liability and a manufacturer is not required to be the virtual insurer of its products."  The mere occurrence of an accident in connection with the use of a product does not necessarily make the product defective and unreasonably dangerous.  "[A] manufacturer has no duty to produce the safest product possible, but rather has a duty merely to avoid placing on the market a product which presents an unreasonable risk of harm to others."

*Shaw v. Play Dirty Colorado ATV Tours, LLC*, 2009 WL 321698, at *3 (D. Colo. 2009) (internal citations omitted).  In this case, the viability of each of the claims against Defendant Mountain Man hinges on the proffered opinions of Mr. Gale.  Plaintiff's counsel conceded this point during oral argument.  In view of this court's decision granting Mountain Man's Motion to Exclude Plaintiff's Expert Testimony Pursuant to F.R.E 702 (doc. # 87), Ms. Squires cannot sustain her burden as the non-moving party under Rule 56.[9]

> If summary judgment can be avoided merely by presenting the unsupported opinion of an expert witness, it would be virtually impossible for a court to grant summary judgment as long as the non-moving party could locate a sole expert who was willing to create a genuine issue of material fact for a price.

*State Farm Fire and Casualty Co. v. Miles*, 730 F. Supp. 1462, 1472 (S.D. Ind. 1990), *aff'd* 930 F.2d 25 (7th Cir. 1991).  *See also Williams v. Ford Motor Co.*, 187 F.3d 533, 543 (6th Cir. 1999) (holding that the report and affidavits submitted by plaintiffs' expert were wholly insufficient to establish a genuine issue of material fact where the expert's opinions were entirely conclusory, were not supported by any specific data, and were premised on an unsupported factual assertion);

---

[9]I note that the Eighth Claim for Relief alleges negligence on the part of Mountain Man in the design and manufacture of the bi-ski involved in events of February 13, 2008.  Under Colorado law, "expert testimony is required in negligence cases to establish the standard of care when the standard is outside the common knowledge and experience of ordinary persons."  *Xtreme Coil Drilling Corp. v. Encana Oil Gas (USA), Inc.*, 2010 WL 3777303, at *5 (D. Colo. 2010) (quoting *Oliver v. Amity Mutual Irrigation Co.*, 994 P.2d 495, 497 (Colo. App. 1999)).  Here, the court finds that expert testimony would be essential for lay jurors to fully appreciate the existence of any duty owed by Mountain Man and any breach of that duty.

*Matthiesen v. Banc One Mortgage Corp.*, 173 F.3d 1242, 1247 (10th Cir. 1999) ("the testimony of an expert can be rejected on summary judgment if it is conclusory and thus fails to raise a genuine issue of material fact"); *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir. 1990) ("Expert opinion is admissible and may defeat summary judgment only where it appears that the affiant is competent to give an expert opinion."); *Cadarian v. Merrell Dow Pharmaceuticals, Inc.*, 745 F. Supp. 409, 412 (E.D. Mich. 1989) ("Summary judgment is not precluded simply because a party has produced an expert to support its position. The Court may look beyond an expert's ultimate conclusion and analyze the adequacy of its foundation.").

The deficiencies in Plaintiff's proof are exacerbated by the rebuttal presumption created by C.R.S. § 13-21-403(3), which provides that "ten years after a product is first sold for use or consumption, it shall be rebuttably presumed that the product was not defective and that the manufacturer or seller thereof was not negligent and that all warnings and instructions were proper an adequate." This statute creates a rebuttable presumption that will prevail in the absence of evidence to the contrary. *See Mile Hi Concrete,*, 842 P.2d at 204. Here the evidence is clear that Mountain Man sold the FFS Dual Ski in which Ms. Squires was a passenger to BOEC in 1994.

In the absence of any evidence, save for the inadmissible opinions of Mr. Gale, Plaintiff has failed to raise a genuine issue of material fact that would warrant proceeding to trial on her Sixth, Seventh, Eighth and Ninth Claims for Relief. *Cf. Truck Insurance Exchange v. MagneTek, Inc.*, 360 F.3d 1206, 1214 10th Cir. 2004) (in a products liability action against the product manufacturer, holding that without the excluded expert testimony, the plaintiff did not have sufficient evidence of causation to survive a motion for summary judgment); *Armeanu v.*

*Bridgestone/Firestone North American Tire, LLC*, 2006 WL 4060666, at *7 (D.N.M. 2006)

(granting defendant's motion for summary judgment after striking plaintiffs' products liability

expert and finding that plaintiffs had not presented any other evidence of a manufacturing defect

that would demonstrate a need for a trial).  Here the evidence relative to Plaintiff's claims against

Mountain Man is simply too one-sided to require submission to a jury.  *Cf. Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. at 251-52.  In sum, Mountain Man's Motion for Summary Judgment must

be granted.

## CONCLUSION

Accordingly, for the foregoing reasons, the Court ORDERS that:

(1)     Defendant Breckenridge Outdoor Education Center's Motion to Strike and/or

Limit Plaintiff's Experts Bil Hawkins and Stanley Gale Under Fed. R. Civ. P. 702 and *Daubert*

(doc. # 88) is DENIED.  The court will allow Mr. Gale to offer expert opinions pursuant to Rule

702, to the extent those opinions are relevant to any claims remaining against BOEC in the wake

of the court's decision on BOEC's pending Motion for Summary Judgment.  Mr. Gale may also

offer opinion testimony against Defendant James Michael Goodwin, to the extent those opinions

are relevant to Plaintiff Squires' pending claims against Defendant Goodwin.  Defendant

BOEC's motion also is denied to the extent that it seeks to exclude Mr. Hawkins from offering

opinions on knots, knot tying and rope safety practices.  Defendant BOEC may file appropriate

motions *in limine* in advance of trial to the extent it anticipates Mr. Hawkins''s opinions may

stray beyond these specific parameters.

(2)     Defendant Mountain Man, Inc.'s Motion to Exclude Plaintiff's Expert Testimony

Pursuant to F.R.E. 702 (doc. # 87) is GRANTED.

(3)     Defendant Mountain Man, Inc.'s Motion for Summary Judgment on Plaintiff's

Sixth, Seventh, Eighth and Nine Claims for Relief (doc. #58) is GRANTED and judgment shall

be entered in favor of Defendant Mountain Man, Inc. and against Plaintiff Squires on Claims Six,

Seven, Eight and Nine of the Second Amended Complaint.   Defendant Mountain Man, Inc. shall

be terminated as a party at this time and judgment on the Second Amended Complaint (Doc. #

13) shall be entered in favor of Defendant Mountain Man at the conclusion of the entire case.


DATED this 7th day of November, 2011.

BY THE COURT:


 s/Craig B. Shaffer
United States Magistrate Judge