IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-00309-CBS

KIMBERLY N. SQUIRES, by and through her Guardian and Natural Parent,
LYLE K. SQUIRES
    Plaintiff,
v.

JAMES MICHAEL GOODWIN, and
BRECKENRIDGE OUTDOOR EDUCATION CENTER,
    Defendants.

**MEMORANDUM OPINION AND ORDER ON PLAINTIFF'S
MOTION FOR LEAVE TO AMEND**

THIS MATTER comes before the court on Plaintiff Kimberly N. Squires' Motion for Leave to Amend Complaint to Add Claims for Exemplary Damages and Outrageous Conduct Against Defendant Breckenridge Outdoor Education Center (doc. #90), filed on June 6, 2011. Defendant Breckenridge Outdoor Education Center ("BOEC") filed its Response (doc. #100) on June 26, 2011, and Ms. Squires filed her Reply (doc. #104) on July 11, 2011. After carefully considering the parties' briefs, counsels' comments during a telephone status conference on December 19, 2011, the entire court file and the applicable case law, Plaintiff's motion is granted in part and denied in part for the following reasons.

**PROCEDURAL HISTORY**

While the parties are well versed in the underlying circumstances of the pending litigation, a brief recitation of the procedural history will place the instant motion in context. The present litigation was initiated on February 12, 2010 with the filing of Ms. Squires' original

Complaint. That pleading asserted four claims for relief against Defendant Goodwin and a single claim against Defendant BOEC for "Negligence: Willful and Wanton, Reckless, and/or Grossly Negligent Conduct." The latter claim alleged that BOEC created a "higher-than-normal risk of harm" to Ms. Squires by, *inter alia*, "failing to select appropriate means of connecting Plaintiff's bi-ski to instructor Phillips," "failing to maintain control of Plaintiff's bi-ski," and "failing to retain the tether or rope connected to Plaintiff's bi-ski." The original Complaint further alleged that "Defendant BOEC was aware of the risks to which it was exposing Plaintiff Squires, a minor and disabled skier." Plaintiff filed her First Amended Complaint (doc. #5) on April 15, 2010, which joined Defendant Mountain Man, Inc[1] but did not change the single claim against BOEC. On June 2, 2010, Ms. Squires filed a Second Amended Complaint (doc. #13) but, again, did not change the claim against BOEC. The Second Amended Complaint reiterated the allegation that Plaintiff has suffered non-economic losses for "pain, suffering and anxiety."

Magistrate Judge Boland held a Fed. R. Civ. P. 16 scheduling conference in this action on September 15, 2010. At that conference, the court adopted the parties' proposed pretrial schedule and set October 15, 2010 as the deadline for joinder of parties and amendment of pleadings, a discovery cutoff of April 15, 2011, and a dispositive motion deadline of May 15, 2011. *See* Scheduling Order (doc. #40), at 9.

Defendant BOEC moved for summary judgment (doc. #52) on December 3, 2010, arguing that Plaintiff's Fifth Claim for Relief was barred by a valid release of liability signed by Ms. Squires' mother prior to the accident on February 13, 2008. The parties completed their

---

[1]On November 7, 2011, the court granted Defendant Mountain Man, Inc.'s Motion for Summary Judgment and directed that judgment on the Second Amended Complaint shall be entered in favor of Defendant Mountain Man at the conclusion of the entire case.

initial briefing on this motion by January 24, 2011, but submitted supplemental briefs prior to a hearing on July 20, 2011.

This court issued a Memorandum Opinion and Order (doc. # 120), which concluded that Mrs. Squires had sufficient information to make an informed decision to release any claims that her daughter might have against BOEC and that the release was legally valid and enforceable. However, as a matter of law, the BOEC release cannot bar civil liability for gross negligence. *See* Colo. Rev. Stat. § 13-22-107(4) ("Nothing in this section shall be construed to permit a parent acting on behalf of his or her child to waive the child's prospective claim against a person or entity for a willful and wanton act or omission, a reckless act or omission, or a grossly negligent act or omission."). As to the latter issue, I found that "the evidence, viewed in a light most favorable to Ms. Squires, might lead a reasonable jury to conclude that BOEC was conscious of its conduct and the existing conditions and knew there was a strong probability that injury to Ms. Squires would result."

> The court conclude[d] that Ms. Squires is properly afforded an opportunity to present to a jury evidence of the alleged willful and wanton, reckless, or grossly negligent acts or omissions [of BOEC]. It will best be determined at trial, after the submission of Ms. Squires' case in chief, whether BOEC acted recklessly.

Accordingly, I granted in part and denied in part Defendant BOEC's Motion for Summary Judgement and held that the Fifth Claim for Relief in the Second Amended Complaint shall proceed against BOEC "only on the alleged wilful and wanton, reckless, or grossly negligent acts or omissions."

During a telephone discovery hearing on May 5, 2011, Plaintiff's counsel advised the court and defense counsel that his client would be moving for leave to amend her pleading to add

a claim for punitive damages.[2] Counsel indicated that his request for punitive damages was based, in part, on recently acquired deposition testimony by defense experts (Patrick Kelly and Ruth DeMuth) and a BOEC representative (Paul Gamber), as well the opinions of Plaintiff's own expert, Bil Hawkins. Relying on this evidence, Plaintiff argued that BOEC's employee, Jennifer Phillips, engaged in reckless behavior by not properly utilizing a slip knot on her wrist to maintain contact with the bi-ski containing Ms. Squires. At no time during the May 5, 2011 telephone conference did Plaintiff's counsel allude to the possibility of a new claim against BOEC for outrageous conduct. On May 23, 2011, this court permitted Plaintiff "to file a motion for leave to amend her prayer for relief no later than June 6, 2011" and allowed Defendants to file a Response thereto.

Plaintiff Squires filed the instant Motion for Leave to Amend Complaint in order to include "claims for exemplary damages and outrageous conduct as against BOEC." Ms. Squires suggests that "discovery and deposition testimony garnered in this case" establishes "more than a good faith basis . . . to allege that BOEC's actions and inactions are attended by circumstances of fraud, malice, and/or willful and wanton conduct."

---

[2]As a technical matter, Plaintiff's request to add a "claim" for exemplary damages is misstated. Under Colorado law, exemplary damages are a remedy available in conjunction with a cause of action, not an independent, stand alone claim. *See, e.g., Fuller v. Mickelson*, 2002 WL 3232596, at *1 (D. Colo. 2007) (citing *Palmer v. A.H. Robins Co., Inc.*, 684 P.2d 187, 213 (Colo. 1984)); *Alexander & Alexander, Inc. v. Frank B. Hall and Co., Inc.*, 1990 WL 8028, at *13 (D. Colo. 1990).

## ANALYSIS

While Plaintiff Squires seeks relief pursuant to Fed. R. Civ. P. 15(a), her motion to amend was filed well beyond the October 15, 2010 deadline established in the scheduling order entered on September 15, 2010.  Accordingly, the court must consider the interplay between Rule 15(a) and Fed. R. Civ. P. 16(b)(4).  I am well aware that the Tenth Circuit "has not yet considered whether Rule 16(b)(4) must be met when motions to amend pleadings would necessitate a corresponding amendment of scheduling orders."  *See United States ex rel. Richie v. Lockheed Martin Corp.*, 558 F.3d 1161, 1166 (10th Cir. 2009).  However, lower courts in the Tenth Circuit repeatedly have looked to Rule 16(b)(4) when a party seeks leave to amend pleadings after the deadline for amending pleadings has passed.  *See, e.g., Philippus v. Aetna Health, Inc.*, 2010 WL 148282, at *2-3 (D. Colo. 2010); *Texas Instruments, Inc. v. BIAX Corp.*, 2009 WL 3158155, at *1-2 (D. Colo. 2009); *Jenkins v. FMC Technologies, Inc.*, 2009 WL 1464416, at *1-2 (D. Colo. 2009); *Dias v. City and County of Denver, Colorado*, 2007 WL 4373229, at *2-3 (D. Colo. 2007).  *See also Capital Solutions LLC v. Konica Minolta Business Solutions USA, Inc.*, 2009 WL 3711574, at *8 (D. Kan. 2009) and cases cited therein.

I also am persuaded by the analysis set forth in *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709 (8th Cir. 2008).  In that case, the defendant moved to amend its answer to plead a new affirmative defense more than seventeen months after the deadline for amending pleadings.  The appellate court reversed the jury verdict in favor of the defendant after concluding that the trial court abused its discretion by granting the belated motion to amend in the absence of "good cause" under Rule 16(b)(4).  As the court noted in *Sherman,* Rule 16(b) specifically requires the trial court to "'issue a scheduling order' which 'must limit the time to join other parties, amend

5

the pleadings, complete discovery, and file motions.'" *Id.* at 715.

> When a party seeks to amend a pleading after the scheduling deadline for doing so, the application of Rule 16(b)'s good-cause standard is not optional. To permit district courts to consider motions to amend pleadings under Rule 15(a) without regard to Rule 16(b) "would render scheduling orders meaningless and effectively . . . read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure."

*Id.* at 716 (quoting *Sosa v. Airprint Systems, Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1988)). In this case, the court need not address the applicability of Rule 15(a) unless it first finds that Plaintiff has satisfied the requirements of Rule 16(b)(4).

Rule 16(b)(4) provides that a scheduling order "may be modified only for good cause and with the judge's consent." *See* Fed. R. Civ. P. 16(b)(4). *See also* D.C.COLO.LCivR 16.1 ("The schedule established by a scheduling order shall not be modified except upon a showing of good cause and by leave of court"). This "good cause" requirement reflects the important role a scheduling order plays in the court's management of its docket. *Cf. Washington v. Arapahoe County Department of Social Services,* 197 F.R.D. 439, 441 (D. Colo. 2000) (noting that a "scheduling order is an important tool necessary for the orderly preparation of a case for trial"). *See also Rent-a-Center, Inc. v. 47 Mamaroneck Ave. Corp.*, 215 F.R.D. 100, 101 (S.D.N.Y. 2003) ("scheduling orders are designed to offer a degree of certainty in pretrial proceedings, ensuring that at some point both the parties and the pleadings will be fixed and the case will proceed"); *Deghand v. Wal-Mart Stores, Inc.*, 904 F. Supp. 1218, 1221 (D. Kan. 1995) ("a scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril").

The "good cause" standard requires the moving party to show that despite its diligent

efforts, it could not have reasonably met the scheduled deadline. *See Pumpco, Inc. v. Schenker International, Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001).

> Rule 16(b)'s "good cause" standard is much different than the more lenient standard contained in Rule 15(a). Rule 16(b) does not focus on the bad faith of the movant, or the prejudice to the opposing party. Rather, it focuses on the diligence of the party seeking leave to modify the scheduling order to permit the proposed amendment. Properly construed, "good cause" means that scheduling deadlines cannot be met despite a party's diligent efforts. In other words, this court may "modify the schedule on a showing of good cause if [the deadline] cannot be met despite the diligence of the party seeking the extension." Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief.

*Colorado Visionary Academy v. Medtronic, Inc.*, 194 F.R.D. 684, 687 (D. Colo. 2000) (quoting *Dilmar Oil Co., Inc. v. Federated Mutual Ins. Co.*, 986 F. Supp. 959 (D.S.C. 1997)).

Assuming the Rule 16(b) "good cause" standard is met, the court then must consider the balancing test mandated by Fed. R. Civ. P. 15(a). I readily acknowledge that the underlying purpose of Rule 15(a) is to facilitate a decision on the merits. *Bob Marshall Alliance v. Lujan*, 804 F. Supp. 1292, 1298 (D. Mont. 1992) (noting that the court's exercise of discretion must "be guided by the underlying purpose of Rule 15 – to facilitate decision on the merits, rather than on the pleadings or technicalities"). To that end, motions to amend should be freely granted when justice requires. *See, e.g., Bellairs v. Coors Brewing Co.*, 907 F. Supp. 1448, 1459 (D. Colo. 1995).

In considering the "needs of justice," however, the court must take into consideration the interests of all parties.

> Several factors are typically considered by the courts in determining whether to allow amendment of a complaint. These include whether the amendment will result in undue prejudice, whether the request was unduly and inexplicably delayed, was offered in good faith, or that the party had sufficient opportunity to

> state a claim and failed. Where the party seeking amendment knows or should
> have known of the facts upon which the proposed amendment is based but fails to
> include them in the original complaint, the motion to amend is subject to denial.

*Las Vegas Ice & Cold Storage Co. v. Far W. Bank*, 893 F.2d 1182, 1185 (10th Cir. 1990). *See also Arkansas-Platte & Gulf Partnership v. Dow Chemical*, 886 F. Supp. 762, 765 (D. Colo. 1995) ("Leave to amend should be freely given based on the balancing of several factors, including futility, delay, bad faith, dilatory motive, repeated failure to cure deficiencies, and prejudice to the opposing party."). A motion to amend must be left to the sound discretion of the district court. *State Distribs., Inc. v. Glenmore Distilleries Co.*, 738 F.2d 405, 416 (10th Cir. 1984).

Applying the foregoing standards to the instant case, I will grant Plaintiff's motion to the extent she seeks to add a request for punitive damages against BOEC in her prayer for relief. In Colorado, punitive damages are available by statute when "the injury complained of is attended by circumstances of fraud, malice, or willful and wanton conduct . . . ." *See* Colo. Rev. Stat. § 13-21-102(1)(a). Section 13-21-102(1)(b) defines "willful and wanton conduct" as "conduct purposefully committed which the actor must have realized as dangerous, done heedlessly, and recklessly, without regard to consequences, or of the rights and safety of others, particularly the plaintiff." Where a "defendant is conscious of his conduct and the existing conditions and knew or should have known that injury would result, the statutory requirements of section 13-21-102 are met." *Qwest Services Corp. v. Blood*, 252 P.3d 1071, 1092 (Colo. 2011) (quoting *Coors v. Sec. Life of Denver Ins. Co.*, 112 P.3d 59, 66 (Colo. 2005), *opinion modified and superseded on denial of rehearing by Qwest Services Corp. v. Blood*, --- P.3d ---- (Colo. Jun 20, 2011) (No. 09SC534).

Under Colorado law, a plaintiff may not include a claim for exemplary damages in an initial claim for relief, and may only amend his or her complaint to add such a claim if the plaintiff presents *prima facie* proof of a triable issue. "The existence of a triable issue on punitive damages may be established through discovery, by evidentiary means, or by an offer of proof." *Leidholt v. District Court In and For City and County of Denver*, 619 P.2d 768, 771 (Colo. 1980), *overruled in part on other grounds*, *Corbetta v. Albertson's, Inc.* 975 P.2d 718 (Colo. 1999). From the outset of this litigation, Ms. Squires has alleged that BOEC's actions and omissions were "heedless, reckless and/or without regard to the consequences and with regard to the rights and safety of others, particularly Plaintiff Squires." I will presume that Plaintiff and BOEC have conducted discovery in this case with that allegation in mind. Finally, this court has determined already that "the evidence, viewed in a light most favorable to Ms. Squires, might lead a reasonable jury to conclude that BOEC was conscious of its conduct and the existing conditions and knew there a strong probability that injury to Ms. Squires would result." Under the circumstances, I do not find that Plaintiff's request to add a prayer for exemplary damages is either untimely or prejudicial to BOEC. Of course, I express no opinion as to whether Plaintiff can marshal sufficient evidence to prove at trial "beyond a reasonable doubt" her entitlement to those damages. *See Coors v. Sec. Life of Denver Ins. Co.*, 112 P.3d at 65-66 ("The sufficiency of evidence to justify an award of punitive damages is question of law.").

Plaintiff's request to add a new claim for outrageous conduct, however, comes before the court in a completely different light. Ms. Squires' counsel never alluded to the possibility of this new claim during the telephone discovery hearing on May 5, 2011, and cannot plausibly suggest that a claim for outrageous conduct would have been subsumed by the court's ruling on May 23,

2011 allowing Ms. Squires to "file a motion for leave to amend her prayer for relief." And so the court turns first to the good cause standard under Rule 16(b).

The October 15, 2010 deadline for amending pleadings originated with the parties, and was adopted by Magistrate Judge Boland after Plaintiff already had filed her Second Amended Complaint on June 2, 2010. The parties held their Fed R. Civ. P. 26(f) meeting on August 24, 2010, and Plaintiff could have commenced formal discovery that very day. *See* Fed. R. Civ. P. 26(d) ("A party may not seek discovery from any source *before* the parties have conferred as required by Rule 26(f)") (emphasis added). Plaintiff's Motion for Leave to Amend does not acknowledge the October 15, 2011 deadline and makes no reference to Rule 16(b) or to the case law construing the good cause standard. The instant motion was filed approximately eight months after the deadline for amending the pleadings, nearly two months after the close of discovery, and six months after BOEC filed its motion for summary judgment.

A review of the arguments raised in Plaintiff's motion and the attached exhibits begs the question why this new claim is being asserted so belatedly. Plaintiff 's counsel presumably had unfettered access to his client, her parents, and relevant medical records well before the October 15, 2011 deadline and, therefore, was in a position to evaluate the emotional effects of the February 13, 2008 incident. *Cf. Learn v. Daeschner*, 349 F.3d 888, 908 (6th Cir. 2003) (holding that the Rule 16(b)(4) "good cause" standard was not met where plaintiffs could have pled their new claim for money damages within the parameters of the court's scheduling order because plaintiffs were well aware of the underlying facts and the various types of relief available)*; Roberge v. Lupo, LLC*, 254 F.R.D. 21, 23 (D. Me. 2008) (in denying plaintiff's motion for leave to amend filed after expiration of the deadline for amendment of pleadings, held that plaintiff

"had sufficient evidence to support this claim at the time the original complaint was filed"). Although counsel was privy to this information from the outset of the litigation, the original Complaint and every subsequent amendment has alleged simply that Plaintiff suffered non-economic losses for "pain, suffering and anxiety."

Ms. Squires suggests that her claim for outrageous conduct is supported by BOEC's lack of written safety rules for adaptive skiing, by Ms. Phillips' failure to utilize a "properly tied slipknot," by Ms. Phillips' decision to take Ms. Squires down a blue ski run, and by BOEC's failure to mandate a redundant safety system in conjunction with its adaptive ski program. In support of these arguments, Ms. Squires cites to the opinions proffered by her own experts, Stan Gale and Bil Hawkins, to November 11, 2010 deposition testimony given by Ms. Phillips, and the December 14, 2011 testimony of BOEC's Rule 30(b)(6) designee, Gene Gamber. Many of these same points were addressed in Plaintiff's Response to BOEC's Motion for Summary Judgment (doc. #56), filed on January 6, 2011. Under the circumstances, it is difficult to reconcile the expectation of due diligence incorporated into Rule 16(b) with Plaintiff's delay of several months in asserting her outrageous conduct claim.

"A litigant's failure to assert a claim as soon as he could have is properly a factor to be considered in deciding whether to grant leave to amend." *In re Enron Corporation Securities, Derivative & ERISA Litigation*, 610 F. Supp. 2d 600, 653 (S.D. Tex. 2009) ( "where plaintiffs 'deliberately chose to delay amending their complaint, . . . a busy court need not allow itself to be imposed upon by the presentation of theories seriatim'"). *See also Transamerica Life Insurance Co. v. Lincoln National Life Insurance Co.*, 590 F. Supp. 2d 1093, 1100-1105 (N.D. Iowa 2008) (concluding that plaintiff's belated motion for leave to amend was not prompted by a change in

the law, but rather reflected "second guessing" of earlier tactical decisions to forego those claims; held that plaintiff knew all the circumstances giving rise to the belatedly proposed claim well before the deadline for leave to amend). The Federal Rules of Civil Procedure will not necessarily protect a party from the unforeseen consequences of their own litigation strategy. *See Martinez v. Target Corp*, 2010 WL 2616651, at *4 (10th Cir. 2010) (finding no abuse of discretion in the trial court's denial of plaintiff's untimely motion for leave to amend; found inadequate plaintiff's explanation that she did not move to amend because she thought her FMLA claim was premature). I do not discount the contentious nature of this lawsuit. However, the court's analysis under Rule 16(b)(4) is more narrowly focused on the due diligence of the moving party. Ms. Squires' motion falls short under that standard.

This court has an independent responsibility for case management. *Cf. Beller ex rel. Beller v. United States*, 221 F.R.D. 689, 693 (D.N.M. 2003) (the case management elements of Rule 16 are based on the "recognition that cases can move efficiently through the federal system only when courts take the initiative to impose and enforce deadlines"). As the Tenth Circuit has acknowledged, courts have a "high duty to insure the expeditious and sound management of the preparation of cases for trial."

> While on the whole Rule 16 is concerned with the mechanics of pretrial scheduling and planning, its spirit, intent and purpose is clearly designed to be broadly remedial, allowing courts to actively manage the preparation of cases for trial . . .

*Olcott v. Delaware Flood Co.*, 76 F.3d 1538, 1555 (10th Cir. 1996) (quoting *Matter of Sanction of Baker*, 744 F.2d 1438, 1440 (10th Cir. 1984)). Both the court and Defendant BOEC are entitled to expect that by a date certain, Plaintiff's claims will be fixed and the case will proceed

on that basis.  Based upon a lack of diligence in pursuing her claim against BOEC for outrageous conduct, I conclude that Plaintiff has not sustained her burden under Rule 16(b)(4).

The court would reach the same result under Rule 15(a).  There is no absolute right to repeatedly amend a complaint, and in exercising its discretion under Rule 15(a), the court will be guided by considerations of efficiency.  *See, e.g., Peresypa v. Jiminy Peak Mountain Resort, Inc.*, 653 F. Supp. 2d 131, 135 (D. Mass. 2009) (in denying plaintiff's motion to amend to add claims for breach of warranty and gross negligence, the court noted that the motion to amend came more than one year after plaintiffs filed their complaint, several months after the close of non-expert discovery, and nearly a month after defendant filed its motion for summary judgment; held that given plaintiff's lack of diligence in pursuing the new claims, the motion to amend was simply too late).  "[W]ith the passage of time and acceptance of earlier amendments, the party seeking leave to amend must justify that request by more than invocation of the concept of [Fed.R.Civ.P. 15(a)]'s liberality."  *Centra, Inc. v. Chandler Ins. Co., Ltd.,* 229 F.3d 1162, at *11 (10th Cir. 2000).

I cannot find that Plaintiff's outrageous conduct claim is timely under Rule 15(a).  *See Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1495 (10th Cir. 1995) ("untimeliness in itself can be a sufficient reason to deny leave to amend, particularly when the movant provides no adequate explanation for the delay"); *Deghand v. Wal-Mart Stores, Inc.,* 904 F. Supp. at 1221 (holding that courts may deny leave to amend for untimeliness or undue delay without a showing of prejudice to the opposing party).  As noted previously, the instant motion was filed almost eight months after the deadline for joining new parties, after BOEC moved for summary judgment, and after the close of discovery.  *Cf. Hedrick v. Honeywell, Inc.*, 796 F. Supp. 293, 295

(S.D. Ohio) (plaintiff denied leave to file second amended complaint alleging fraud where discovery had closed and defendant had filed motion for summary judgment). The court does not find that Plaintiff has provided a compelling explanation for her delay in asserting this claim.

As a separate basis for denying Plaintiff's motion, I conclude based on the extensive record before the court that the proposed outrageous conduct claim would be futile. "The elements of a claim for outrageous conduct are (1) the defendant engaged in extreme and outrageous conduct; (2) the defendant engaged in such conduct recklessly or with the intent to cause the plaintiff severe emotional distress; and (3) the defendant's conduct caused the plaintiff to suffer severe emotional distress." *English v. Griffith*, 99 P.3d 90, 93 (Colo. App. 2004) (citing *Culpepper v. Peal Street Building, Inc.*, 877 P.2d 877, 882 (Colo. 1994)). The trial court must make the initial determination whether reasonable persons could differ on the question of whether the defendant's conduct was outrageous. *Id.*

A claim for outrageous conduct under Colorado law requires evidence of "severe emotional distress," which "consists of highly unpleasant, mental reactions . . . and is so extreme that no person of ordinary sensibilities could be expected to tolerate and endure it." *See* CJI-Civ. 23:1 and 23:4 (2011). *See also Coors Brewing Co. v. Floyd*, 978 P.2d 663, 666 (Colo. 1999) (holding that liability for outrageous conduct "has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community"). In successive pleadings filed on February 12, April 15, and June 2, 2010, Ms. Squires has never alleged "severe emotional distress."

Although Plaintiff has presented evidence to challenge Ms. Phillips' choice of terrain, the

adequacy of her knot-tying, and the sufficiency of BOEC's policies, I find that this evidence does not equate to "atrocious and utterly intolerable" behavior and is not sufficient to create a jury question on whether Defendant's conduct exceeds "all possible bounds of decency.*"* In deciding the threshold question of whether Plaintiff has alleged conduct that is outrageous as a matter of law, the court must evaluate the totality of Defendant's conduct*. Cf. Green v. Qwest Services Corp.*, 155 P.3d 383, 385 (Colo. App. 2006) ("The fact that an accident occurred while the defendant was engaged in an inherently dangerous activity does not elevate it to outrageous conduct."). So, for example, in *Green,* the appellate court upheld the dismissal of plaintiffs' outrageous conduct claim even after accepting as true the allegations that defendant's employees were inexperienced, poorly trained and unsupervised, that the employees were aware of a nearby gas line before they started their excavations, and that excavating near a natural gas line is inherently dangerous. *Id.* at 386.

My determination of futility also takes into consideration the timing of Plaintiff's motion. "The bar for a plaintiff tendering an amended complaint is higher after a motion for summary judgment has been filed, as the plaintiff must demonstrate 'that the proposed amendments were supported by substantial and convincing evidence." *Adorno v. Crowley Towing and Transportation Co.*, 443 F. 3d 122, 126 (1st Cir. 2006) (quoting *Resolution Trust Corp. v. Gold*, 30 F.3d 241, 153 (1st Cir. 1994). *See also Bauchman for Bauchman v. West High School*, 132 F.3d 542, 562 (10th Cir. 1997) ("A court properly may deny a motion for leave to amend as futile when the proposed amended complaint would be subject to dismissal for any reason, including that the amendment would not survive a motion for summary judgment."). I find that Plaintiff has not made a sufficient showing to support the proposed claim for outrageous conduct.

15

## CONCLUSION

Accordingly, for the foregoing reasons, Plaintiff Squires' Motion for Leave to Amend Complaint to Add Claims for Exemplary Damages and Outrageous Conduct Against Defendant Breckenridge Outdoor Education Center (doc. #90) is GRANTED IN PART and DENIED IN PART.  The motion is granted to the extent Plaintiff seeks leave to include a request for exemplary damages in her prayer for relief.  In all other respects, the motion is denied.

DATED this 9th day of January, 2012.

BY THE COURT:

  s/ Craig B. Shaffer
United States Magistrate Judge