IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Craig B. Shaffer

Civil Action No. 10-cv-00309-CBS-BNB

KIMBERLY N. SQUIRES, by and through her Guardian and Natural Parent, LYLE K. SQUIRES,
        Plaintiff,
v.

BRECKENRIDGE OUTDOOR EDUCATION CENTER, a Colorado corporation,
        Defendants.

_____

## ORDER ON BOEC'S MOTION TO REVIEW TAXATION OF COSTS

_____

This civil action comes before the court on Defendant Breckenridge Outdoor Education

Center's ("BOEC") Motion to Review Taxation of Costs (doc. #287), which seeks $150,670.58 in

additional costs previously disallowed by the Clerk of Court.  Plaintiff Kimberly Squires filed an

Objection to Defendant BOEC's Motion to Review Taxation of Costs (doc. #288), which was followed

by BOEC's Reply to Plaintiff's Objection (doc. #293), and Ms. Squires' Notice of Supplemental

Authorities (doc. #294).  This court heard oral argument on the pending motion during hearings on

July 31, and December 20, 2012.  At the conclusion of the December 20, 2012 hearing, the parties

were invited to submit supplemental briefing in light of the court's comments and questions from the

bench.  Neither side submitted additional information or legal authorities, instead relying on arguments

advanced in their original filings.  After carefully considering the briefs and exhibits submitted by the

parties, the entire case file and the applicable case law, the court will grant in part and deny in part

Defendant's Motion to Review Taxation of Costs.

## PROCEDURAL BACKGROUND

Ms. Squires commenced this litigation on February 12, 2010 with the filing of her original

Complaint.  That pleading asserted four claims for relief against Defendant Goodwin and a single

claim against Defendant BOEC for "Negligence: Willful and Wanton, Reckless, and/or Grossly

Negligent Conduct."  Plaintiff filed her First Amended Complaint (doc. #5) on April 15, 2010, which joined Defendant Mountain Man, Inc. but did not change the single claim against BOEC.  On June 2, 2010, Ms. Squires filed a Second Amended Complaint (doc. #13) but, again, did not change the claim against BOEC.  The Second Amended Complaint alleged that Ms. Squires "has suffered past and future economic losses for medical expenses in excess of $700,000," and further sought recovery for past, present and future earnings, as well as impairment of future earning capacity and non-economic losses.  On September 28, 2010, Defendant BOEC served an Offer of Settlement, pursuant to C.R.S. § 13-17-202, offering to settle Plaintiff's claims against BOEC for the amount of $351.00, which would include all applicable costs and prejudgment interest accrued as of the date of the Offer of Settlement.[1] *See* Exhibit A (doc. #287-1) attached to Defendant BOEC's Motion to Review Taxation of Costs.

On January 17, 2012, Defendant Mountain Man was dismissed from this action pursuant to an Order on Stipulated Notice of Dismissal with Prejudice (doc. #131).  Plaintiff Squires agreed to dismiss with prejudice her claims against Defendant Goodwin pursuant to a Stipulation (doc. #248) filed on March 26, 2012.[2]  The case against Defendant BOEC proceeded to trial on March 26, 2012 and concluded on April 5, 2012 with a jury verdict in favor of BOEC on Plaintiff's remaining claim based on willful and/or reckless conduct.  A Final Judgment (doc. #279) was entered on April 12, 2012 in favor of Defendant BOEC and against Plaintiff Squires.  "It [was] further ORDERED that the defendant is AWARDED its costs, to be taxed by the Clerk of Court pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1."

BOEC submitted its proposed Bill of Costs (doc. #280) on April 26, 2012, seeking

---

[1]In the Scheduling Order (doc. #40) entered by Magistrate Judge Boland on September 15, 2010, Plaintiff indicated that her then-current medical expenses exceeded $434,914.18.

[2]On November 8, 2011, this court entered summary judgment in favor of BOEC to the extent the claim against Defendant Breckenridge Outdoor Education Center was predicated on a theory of simple negligence.  My Memorandum Opinion and Order permitted Ms. Squires to proceed against BOEC only on alleged willful and wanton, reckless, or grossly negligent acts or omissions.

$167,276.93.  After holding a cost hearing, the Clerk of Court awarded BOEC $16,294.47 in taxable

costs pursuant to 28 U.S.C. §§ 1821 and 1920.  The Clerk of Court's award did not allow any costs

pursuant to C.R.S. § 13-17-202.  BOEC challenges that determination in the pending motion.

Defendant argues that Fed. R. Civ. P. 54(d), which permits a prevailing party to recover certain

enumerated costs, other than attorney fees, does not preclude an award of "actual costs" under

Colorado's offer-of-settlement statute, C.R.S. § 13-17-202.  To the contrary, BOEC contends that

"costs must be awarded pursuant to Colorado law to the extent they constitute costs other than

attorneys fees under Rule 54(d)(1) and are not preempted by a federal statute."  *See* BOEC's Motion to

Review Taxation of Costs, at 4.  Defendant also maintains that the "actual costs" it is claiming under

the Colorado statute were reasonable and incurred solely for the benefit of the litigation, and thus

should be awarded.

Plaintiff Squires argues, to the contrary, that BOEC may only recover costs under Rule

54(d)(1), and is limited to those costs that are both "necessary and reasonable."  According to Ms.

Squires, C.R.S. § 13-17-202 has no applicability in this case, having been preempted by Rule 54(d)(a)

and Fed. R. Civ. P. 68.  Finally, Plaintiff challenges specific itemized costs sought by BOEC,

suggesting that these costs were either unreasonable or unnecessary and incurred solely for the

convenience of counsel.

## ANALYSIS

As a threshold matter, the court must determine the appropriate legal standard for evaluating

Defendant's Bill of Costs.  If the recovery of costs in this case is governed solely by Rule 54(d) and 28

U.S.C. § 1920, then many of BOEC's unpaid costs cannot be recovered.  If, on the other hand, BOEC

can successfully invoke C.R.S. § 13-17-202, Plaintiff's objections may, in large part, be misplaced.

Rule 54(d)(1) provides that "[u]nless a federal statute, these rules, or a court order provides

otherwise, costs – other than attorney's fees – should be allowed to the prevailing party."  The costs

that may be recovered under Rule 54(d)(1) are limited to the expenses enumerated in 28 U.S.C. §

1920, *see Sorbo v. United Parcel Service*, 432 F.3d 1169, 1179 (10th Cir. 2005), and include fees for

printed or electronically recorded transcripts necessarily obtained for use in the case, fees and

disbursements for printing and witnesses, and fees for exemplification and the costs of making copies

of any materials where the copies are necessarily obtained for use in the case. *See also Crawford

Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441-42 (1987) (holding that "section 1920 enumerates

expenses that a federal court may tax as a cost under the discretionary authority found in Rule 54(d)"),

*superseded on other grounds by* 42 U.S.C. § 1988.  Although Rule 54(d) creates a presumption that

costs should be awarded to the prevailing party, *see, e.g., Treaster v. HealthSouth Corp.*, 505 F. Supp.

2d 898, 901 (D. Kan. 2007), the taxing of costs is reserved to the trial court's sound discretion.  *Allison

v. Bank One-Denver*, 289 F.3d 1223, 1248 (10th Cir. 2002) (noting that "an abuse of that discretion

occurs only where the trial court 'bases its decision on an erroneous conclusion of law or where there

is no rational basis in the evidence for the ruling'") (quoting *In re Coordinated Pretrial Proceedings in

Petroleum Prod. Antitrust Litig.*, 669 F.2d 620, 623 (10th Cir. 1982)).  The burden of persuasion rests

with the party seeking costs, and the prevailing party assumes the risk of failing to establish the

amount of compensable costs and expenses to which it is entitled.  *Id.* at 1248-49.

        In this case, BOEC also relies upon C.R.S. § 13-17-202(1)(a)(II), which provides, in pertinent

part, that "[i]f the defendant serves an offer of settlement in writing at any time more than fourteen

days before the commencement of trial that is rejected by the plaintiff, and the plaintiff does not

recover a final judgment in excess of the amount offered, then the defendant shall be awarded actual

costs accruing after the offer of settlement to be paid by the plaintiff."  This provision, by its very

terms, applies to the facts in this case.  In seeking to recover additional costs, Defendant BOEC

specifically relies upon its September 28, 2010 Offer of Settlement, which was declined by Plaintiff

Squires.  Section 13-17-202(b) excludes attorney fees from the definition of "actual costs," but

4

specifically includes:

> costs actually paid or owed by the party, or his or her attorneys or agents, in connection with the case, including but not limited to filing fees, subpoena fees, reasonable expert witness fees, copying costs, court reporter fees, reasonable investigative expenses and fees, reasonable travel expenses, exhibit or visual aid preparation or presentation expenses, legal research expenses, and all other similar fees and expenses.

Colorado courts consistently have held that a trial court has no discretion to deny an award of actual costs under § 13-17-202(1) provided that "it determines those costs are reasonable." *See, e.g., Valentine v. Mountain States Mutual Casualty Co.*, 252 P.3d 1182, 1187 (Colo. App. 2011) (noting that an award of costs will be reversed "only upon a showing that [the court] clearly abused its discretion by acting in a manner than was manifestly arbitrary, unreasonable, or unfair"). "What amounts to a reasonable cost under section 13-17-202 is committed to the trial court's sound discretion." *Catlin v. Tormey Bewley Corp.*, 219 P.3d 407, 415 (Colo. App. 2009).

Plaintiff Squires attempts to avoid the potentially adverse consequences of § 13-17-202 by arguing that in cases brought under this court's diversity jurisdiction, Rules 54(d)(1) and 68[3] preempt state cost-shifting statutes which conflict with federal law. Unfortunately, that argument is contrary to prevailing law in the Tenth Circuit. In *Garcia v. Wal-Mart Stores, Inc.*, 209 F.3d 1170, 1176 (10th Cir. 2000), the Tenth Circuit held that Rule 54(d)(1) only preempts a conflicting state cost-shifting provision. The court in *Garcia* noted that "Rule 54(d) [does not] necessarily conflict with an award of 'actual' costs" and concluded that "to the extent that [§13-17-202] authorizes the award of 'actual' costs other than those costs authorized by 28 U.S.C. §§ 1821, 1920-23, or another federal statute or rule, those costs are not barred by Rule 54(d)(1)." *Id.* at 1177. *Cf. Scottsdale Insurance Co. v.*

---

[3]The factual record in this case precludes reliance on Fed. R. Civ. P. 68 which only applies where "the judgment that the offeree [plaintiff] finally obtains is not more favorable than the unaccepted offer." *See, e.g., Marx v. General Revenue Corp.*, 668 F.3d 1174, 1182 (10th Cir. 2011) (noting that "Rule 68 applies only where the district court enters judgment in favor of a plaintiff for an amount less than the defendant's settlement offer," and holding that "Rule 68 . . . is simply inapplicable when the defendant obtains the judgment").

*Tolliver*, 636 F.3d 1273, 1279 (10th Cir. 2011) (in a case arising under diversity jurisdiction, held that

Oklahoma's offer of judgment statute did not collide with Rule 68, leaving the Oklahoma statute "to

operate on its own").  *See also Infant Swimming Research, Inc. v. Faegre & Benson, LLP*, 2008 WL

5044501, at*4 (D. Colo. Nov. 20 2008) (holding that "state statutes regarding award of costs to

successful litigants control in diversity actions").   I find, in this case, that C.R.S. § 13-17-202 is not

preempted by Rule 54(d)(1) and that Defendant BOEC can recover its "actual costs" to the extent

those expenses are deemed reasonable.[4]

The decisions cited by Plaintiff Squires in her Objection are readily distinguishable.  In

*Chaparral Resources, Inc. v. Monsanto Co.*, 849 F.2d 1286 (10th Cir. 1988), the court's analysis was

limited to taxation of expert witness costs.  The court in *Chaparral Resources* held that "absent

explicit statutory or contractual authorization for the taxation of a litigant's [expert] witness for trial,

federal courts are bound by the limitations set out in 28 U.S.C. § 1821 and § 1920."  *Id.* at 1292.

Similarly, in *Aceves v. Allstate Insurance Co.*, 68 F.3d 1160, 1168 (9th Cir. 1995), another case cited by

Ms. Squires, the Ninth Circuit simply held that "federal law should control the reimbursement of

expert witnesses in federal court sitting in diversity jurisdiction," and emphasized that this case raised

choice of law issues in the context of expert witness fees, "not offer of judgment rules."  In *Grabau v.*

*Target Corp.*, 2009 WL 723340, at *1 (D. Colo. Mar. 18, 2009), which did not involve an offer of

judgment or offer of settlement under Colorado law, the plaintiff challenged the clerk's denial of costs

for expert witness fees, legal research and deliveries.  The district court held that it was not bound by

*Garcia* because that case "dealt with an entirely different statute, namely the offer of settlement

statute, C.R.S. § 13-17-202, which the court in *Garcia* found to be mandatory, rather than

discretionary."  *Id.  Cf. Gobbo Farms v. Poole Chemical Co.,* Inc., 81 F.3d 122, 123 (10th Cir. 1996)

---

[4]Given Defendant's ability to recover its reasonable actual costs under § 13-17-202, the court
need not consider those same costs under the narrower parameters of Rule 54(d)(1).

(although the court held that federal law controls the assessment of costs in a diversity case, the court also noted that the case did not involve the application of a state cost-shifting statute, but rather the exercise of the district court's discretion to award costs as sanctions pursuant to Rule 54(d)(2)(E)).

More problematic is an issue raised by the court during the hearing on December 20, 2012. The Colorado offer-of-settlement statute is intended to encourage settlements by imposing costs upon a rejecting party. *See Hall v. Frankel*, 190 P.3d 852, 866 (Colo. App. 2008). *Cf. Cedar Lane Investments v. St. Paul Fire & Marine Insurance Co.*, 883 P.2d 600, 604 (Colo. App. 1994) (noting that "[s]ection 13-17-202 was intended to encourage settlement and thereby curb protracted and fruitless litigation"). The legislative declaration that accompanied passage of § 13-17-202 acknowledged the objective underlying the offer-of-settlement statute:

> The general assembly recognizes that litigants often encounter an unreasonable amount of delay in . . . obtaining settlement or a judicial determination of their legal actions. [T]he changes encompassed in this act are designed to make the legal system more effective and efficient by . . . encouraging settlement . . . . In enacting these changes, the intent of the general assembly is to . . . reduce the high cost to individual citizens and to society caused by protracted and fruitless litigation.

*Carpentier v. Berg*, 829 P.2d 507, 508 (Colo. App. 1992).

It should be self-evident that the General Assembly's objectives could only be achieved if the offer of settlement bears some reasonable relationship to the particular circumstances of the case and the attendant litigation risks confronting each party. It would subvert the purpose of § 13-17-202 if the offeror could secure a broad right to recover "actual" costs simply by making a patently unreasonable offer. So, for example, BOEC's September 28, 2010 offer to settle this case for $351.00[5] came approximately seven months after the original Complaint was filed, 13 days after Magistrate Judge Boland set discovery deadlines at the Rule 16 scheduling conference, and before either side had undertaken any significant discovery. It is difficult to see how Defendant's September 28, 2010 offer

---

[5]Ms. Squires was required to pay a fee of $350.00 at the time she filed her original Complaint on February 12, 2010.

was anything other than a tactical ploy divorced from any careful assessment of the litigation risks confronting each party as of that date. More to the point, it cannot be plausibly argued that BOEC's statutory offer to settle this case for one dollar more than Plaintiff's filing fee could have been viewed by Ms. Squires, her family and her counsel as a serious attempt to "encourage settlement."

I recognize there are significant differences between Fed. R. Civ. P. 68 and C.R.S. § 13-17-202. For example, only defendants can make offers of judgment under Rule 68, while the Colorado statute allows any party extend an offer of settlement. Nevertheless, the Supreme Court's comments regarding Rule 68 resonate under the facts of this case.

> If a plaintiff chooses to reject a reasonable offer, then it is fair that he not be allowed to shift the cost of continuing the litigation to the defendant in the event that his gamble produces an award that is less than or equal to the amount offered. But it is hardly fair or evenhanded to make the plaintiff's rejection of an utterly frivolous settlement offer a watershed event that transforms a prevailing defendant's right to costs in the discretion of the trial judge [under Rule 54(d)(1)] into an absolute right to recover the costs incurred after the offer was made.

*Delta Airlines, Inc. v. August*, 450 U.S. 346, 352, 356 (1981) (noting that the "purpose of Rule 68 is to encourage the settlement of litigation"). Echoing this same sentiment, another judge has observed that

> Rule 68 should force parties on both sides of the case to focus their attention on a realistic assessment of the value of their case. It encourages defendants to make a realistic offer, by providing them with a potential benefit, the payment of their costs, should their assessment be vindicated by the outcome . . . . It should also force plaintiffs to make a realistic assessment, which perhaps did not occur in this case, to the ultimate sorrow of the plaintiffs. It can be an important tool for the prompt and satisfactory disposition of disputes.

*Pouillon v. Little*, 326 F.3d 713, 719 (6th Cir. 2003) (Boggs, J. concurring). *But compare Bennett v. Hickman*, 992 P.2d 67-0, 672 (Colo. App. 1999) ("The intent of § 13-70-202 is to encourage the settlement of litigation by imposing upon a party who rejects a *reasonable* offer of settlement but recovers less than the amount of the offer, all of the post-offer costs of the offeror") (emphasis supplied) and *Graven v. Vail Associates, Inc.*, 888 P.2d 310, 317 (Colo. App. 1994) (holding in a case where summary judgment on a question of law was entered on behalf of the ski resort defendant, that

defendant's settlement offer of one dollar was permissible and consistent with the legislative objective "to encourage settlement [and] also to discourage unnecessary litigation and reduce the attendant costs"), *judgment rev'd on other grounds*, 909 P.2d 514 (Colo. 1995).

Section 13-17-202 mandates that the court must award "actual costs" that BOEC incurred after its offer of settlement was rejected by Plaintiff Squires. *Cf. Catlin*, 219 P.3d at 415 ("[t]he court has no discretion to deny an award of actual costs under this statute, so long as it determines those costs are reasonable"). For the reasons previously stated, this court is bound by that requirement. However, the court has discretion to determine whether costs are reasonable. In exercising that discretion, I should consider whether the services or costs were reasonably necessary to the party's case, and whether the party expended a reasonable amount for those services or tasks. *Cf. Clayton v. Snow*, 131 P.3d 1202, 1203 (Colo. App. 2006). *See also Bruno v. Western Electric Co.*, 618 F. Supp. 398, 406 (D. Colo. 1985) (noting that "[t]he standard of what is reasonably necessary to a case must be applied with some flexibility," as the "purpose of such a standard is not to discourage thoroughness in trial preparation under the guise of economic efficiency, but to prevent the squandering of an adversary's resources") (internal quotation marks omitted); *Scholz v. Metropolitan Pathologists, P.C.*, 851 P.2d 901, 910 (Colo. 1993) (suggesting that a trial court should apply § 13-17-202 in a way that promotes a just and reasonable result, and should not exercise its discretion to "award costs for expenses that never should have been incurred"), *superseded on other grounds by* C.R.S. § 13-64-302(2). Consistent with the foregoing authorities, this court will exercise its proper discretion to determine what costs claimed by BOEC were "reasonable" in light of all the attendant circumstances in this case.

For simplicity, the court will address requested costs in the same categories set forth in Defendant BOEC's Motion to Review Taxation of Costs.

A.    *Court Reporter Fees and Costs Incident to Deposition Transcripts*

Defendant BOEC is requesting $1,415.06 for court reporter fees and costs incident to

deposition transcripts that were not taxed under Rule 54(d)(1).  *See* Exhibit B (doc. #287-2), attached

to Defendant's Motion to Review Taxation of Costs.  BOEC contends the depositions of Plaintiff's

retained economist, Jeffrey Opp, Defendant Mountain Man's company representative, Darvin

Vandegrift, and Patrick Kelley, BOEC's retained engineering expert, were reasonably necessary at the

time they were taken.  The other costs sought by BOEC were incurred to obtain an expedited

deposition transcript, to copy CDs and deposition exhibits, and to deliver deposition transcripts.

Plaintiff Squires contends these costs were properly denied under Rule 54(d)(1), as the

depositions in question were not introduced into evidence at trial, and that the other costs were

incurred solely for the convenience of counsel and, therefore, are not recoverable under 28 U.S.C. §

1920.  Plaintiff summarily, and incorrectly, dismisses the applicability of § 13-17-202.  "Allowable

costs [under § 13-17-202] include the costs of discovery depositions where the trial court determines

they were 'reasonably necessary for the development of the case in light of facts known to counsel at

the time [they were] taken'."  *Harvey v. Farmers Insurance Exchange*, 983 P.2d 34, 41 (Colo. App.

1998), quoting *Cherry Creek School District #5 v. Voelker*, 859 P.2d 805, 813 (Colo. 1993).

I find that Defendant's request for $1,415.06 in court reporter fees and costs incident to

deposition transcripts that were actually incurred by BOEC after September 28, 2010 is authorized by

C.R.S. § 13-17-202 and reasonable under the particular circumstances of this case.


B.    *Costs for Exemplification, Printing, and Copies*

BOEC is seeking $13,712.28 in costs for exemplification, printing and copying.  All of these

costs were incurred after September 28, 2010.  Section 13-17-202(b) specifically includes "copying

costs" within the definition of "actual costs."  Plaintiff Squires contends that the requested amount is

not recoverable under 28 U.S.C. § 1920 or Rule 68, and that § 13-17-202 is not applicable in this case. For the reasons previously stated, I decline to adopt Plaintiff's argument.  Plaintiff also argues that BOEC's request for copying charges should be denied because Defendant "fails to demonstrate that all of these costs were reasonable and necessary to this litigation."  *But compare In re Williams Securities Litigation - WCG SubClass*, 558 F.3d 144, 1149 (10th Cir. 2009) (holding that a "prevailing party need not 'justify every copy' it makes," and that "a description of every copy, replete with an explication of its use, is not necessarily required" to recoup copying costs under § 1920).  While I find that the substantial majority of copying charges incurred after September 28, 2010 are reasonable and should be taxed to Plaintiff, there are copying charges that are not recoverable by BOEC.

For simplicity's sake, I have separated Defendant's copying charges into three distinct categories:  black and white copies prepared after September 28, 2010 and before November 2011;[6] color copies prepared after September 28, 2010 and before November 2011;[7] and all copies (either black and white or color) prepared in November and December 2011.[8]  I find that the costs actually incurred to prepare black and white copies of documents prior to November 2011 are reasonable and recoverable under § 13-17-202.  The itemized list of charges for color copying prior to November 2011, however, are problematic.  On closer examination, it appears that BOEC is claiming color copying charges that differ considerably, and inexplicably, on a per page basis.  For example, BOEC is claiming $.50 per page for color copies prepared in January, February, March, April and August 2011. Defendant then claims $.15 per page for color copying in May 2011, $.20 per page for color copies prepared in July 2011, and $.25 per page for color copying in October 2011.  Defendant has the burden

---

[6]*See* Exhibit C, nos. 43, 44, 46, 48, 49, 51, 52, 54, 56, 57, 59, 62, 63, 65 and 67 (doc. #287-3), attached to Defendant's Motion to Review Taxation of Costs.

[7]*See* Exhibit C, nos. 42, 45, 50, 53, 55, 58, 61, and 66 (doc. #287-3), attached to Defendant's Motion to Review Taxation of Costs.

[8]*See* Exhibit C, nos. 68-73 (doc. #287-3), attached to Defendant's Motion to Review Taxation of Costs.

of persuasion under § 13-17-202.  Without some fuller explanation for these pricing differences, I am hard-pressed to utilize the $.50 per page rate for color copying.  While the court finds that the color copying was reasonable, I will calculate Defendant's color copying costs between January and November 2011 at $.25 per page.  Rather than taxing Ms. Squires $724.46 for color copies produced between January and November 2011, I will limit BOEC's color copying costs to $491.75.  *Cf. Salazar v. American Sterilizer Co.*, 5 P.3d 357, 373 (Colo. App. 2000) (holding that "an award of actual costs in an amount less than what a [party] has claimed as its actual costs is not *per se* error").

I will disallow entirely Defendant BOEC's request for copying charges of $343.00 incurred in November and December 2011.  According to Defendant, the documents in question were copied in November 2011 to prepare "for a mock trial in early December conducted by jury consultants."  If BOEC truly believed that its September 28, 2010 offer of $351.00 was predicated on a thoughtful evaluation of the strengths and weaknesses of its case, then it seems unreasonable to spend $281.15 to copy documents for a December 2011 mock trial, particularly since the court had dismissed Plaintiff's potentially more threatening simple negligence claim against BOEC on November 8, 2011.

BOEC also is claiming copying charges incurred in December 2011 to print or copy 351 pages "related to the mock trial in and to prepare for the December 29 settlement conference with the plaintiff."  It is impossible for the court to determine which documents were created exclusively for the mock trial and which documents were used in conjunction with the later settlement conference.  While I might be inclined to allow recovery for copies used in the settlement conference, counsel has not identified those documents as a discrete recoverable number.  In the absence of clarification, I find that BOEC has not sustained its burden of persuasion and I will disallow the December 2011 copying charges in their entirety.  At the very least, it is not at all clear why the copies prepared for the mock trial could not have been re-used by defense counsel in the settlement conference held later than same month.  Accordingly, I will disallow BOEC's request for $343.00 in copying charges incurred in

November and December 2011.

The court also will disallow the amount of $8,850 paid to "John Kinsler -Technical Trial Services " for "electronic exhibits and computer presentation" and "professional fees from March 12 to April 4, 2012." *See* Exhibit C, no. 83 (doc. #287-3), attached to Defendant's Motion to Review Taxation of Costs. Defense counsel has provided the court with a single lump sum reflecting all of the services provided by Mr. Kinsler. Mr. Kinsler provided defense counsel and their paralegals with technical assistance in publishing to the jury electronic exhibits during trial. Based on the court's own observations, there is no reason to believe that Mr. Kinsler's services during the trial involved anything more technically complex than pulling up exhibits on a computer. *Compare Valentine*, 252 P.3d at 1196 (finding no abuse of discretion in awarding costs associated with an outside trial technical support person, where the record suggested the technicians "were far more than mere page flippers"). I have no way of knowing what portion of the claimed $8,850 is attributable to Mr. Kinsler's work at trial and what portion might represent time expended in the pretrial conversion of paper documents into electronic exhibits. I also do not know whether Mr. Kinsler was paid a flat fee or compensated on an hourly basis. Given the very limited information I have been provided regarding Mr. Kinsler's services, I am unable to conclude that the charges related to those services were reasonable or wholly necessary. I will not require Ms. Squires to reimburse BOEC for work that could have been performed by defense counsel's own staff or for charges that seem excessive. I do not find that BOEC has sustained its burden of persuasion as to the amounts paid to Mr. Kinsler and will disallow the corresponding request for $8,850.00.

After taking into account the foregoing deductions, I will award BOEC $4,286.57 in costs for "exemplification, printing and copies."

### C.    Costs Incident to Taking Depositions

Under this category of costs, Defendant BOEC is requesting $8,624.29 for deposition-related expenses such as airfare, mileage, meals and gratuities, lodging at the deposition location, airport parking, and expert fees.  BOEC contends these expenses can be recovered as "actual costs" under § 13-17-202.  Ms. Squires opposes imposition of these costs, arguing once again that "§ 1920 . . . controls the assessment of taxable costs in this case, not § 13-17-202," and further insisting that not all of the requests costs were reasonable and necessary.  To the contrary,  I find that the claimed costs are reasonable and recoverable by BOEC.

Defendant is seeking a total of $4,532.40 in expert fees associated with the depositions of Plaintiff's retained experts; Bill Hawkins, Jeffrey Opp, Tracy Wingate, and Renee Stucky.    *See* Exhibit Q, nos. 97, 98, 103 and 117 (doc. #287-17), attached to Defendant's Motion to Review Taxation of Costs.  Each of these individuals was identified by Plaintiff as a "will call" witness in the Final Pretrial Order (doc. #237) filed on March 22, 2012.  I can hardly fault BOEC for deposing Ms. Squires' retained experts in advance of trial, and will not question the amount of fees that were set by the very same retained experts.  These "reasonable expert witness fees" are properly taxed under § 13-17-202.

BOEC also incurred travel expenses totaling $1,382.30 in connection with out-of-state depositions of Plaintiff, her family members, and an expert retained by the Squires family.  *See* Exhibit Q, nos. 96, 99, 104-111 (doc. #287-17), attached to Defendant's Motion to Review Taxation of Costs. Section 13-17-202 permits a party to recover as "actual costs" reasonable travel expenses.  Given Ms. Squires' physical limitations and her reliance on family members for many of her life-care functions, it was eminently reasonable for BOEC's counsel to conduct those depositions in Kansas, notwithstanding the fact that Plaintiff had initiated this litigation in Colorado.  *Cf.  O'Neil v. Burton Group*, 2012 WL 5523819, at *2 (D. Utah Nov. 14, 2012) (noting that "where the party deposed is the

plaintiff, a deposition is generally appropriate in the district in which suit was brought because the plaintiff selected that forum"). I find that the travel costs incurred by BOEC to accommodate Ms. Squires, her family, and her out-of-state retained expert were reasonable and should be taxed to Plaintiff.

Similarly, BOEC seeks to recover $901.39 in travel costs associated with the April 2011 deposition in Nevada of Mountain Man's retained expert, Peter Axelson. *See* Exhibit Q, nos. 112-116 (doc. #287-17), attached to Defendant's Motion to Review Taxation of Costs. In the Second Amended Complaint, Ms. Squires alleged that BOEC "created a higher-than-normal risk of harm" by, inter alia, "failing to select and provide appropriate equipment to Plaintiff Squires," by "failing to select appropriate means of connecting Plaintiff's bi-ski to instructor Phillips," and by "failing to maintain control of Plaintiff's bi-ski." *See* Second Amended Complaint (doc. #13), at ¶ 38. Defendant Mountain Man maintained through the discovery process that "it was the alleged negligence of Defendants Goodwin and BOEC that was the proximate cause of the accident." *See, e.g.,* Defendant Mountain Man, Inc.'s Reply Brief to Plaintiff's Response to Motion for Summary Judgment (doc. #71), at 3. As Defendant Mountain Man's expert, Mr. Axelson opined in February 2011 that tether lines supplied by Mountain Man "readily allow the creation of a girth-type hitch . . . to create two fail-safe attachments to the instructor." *See* Axelson Report (doc. #71-1), attached to Defendant Mountain Man, Inc.'s Reply Brief to Plaintiff's Response to Motion for Summary Judgment. Given the litigation position advanced by Mountain Man and the opinions expressed by its expert, it was eminently reasonable for BOEC's counsel to attend Mr. Axelson's deposition.[9] *Cf. In re Williams Securities Litigation*, 558 F.3d at 1148 (noting in a cases involving costs under Rule 54(d)(1) that "caution and proper advocacy may make it incumbent on counsel to prepare for all contingencies which arise during

[9]I also note that while Defendant Mountain Man was dismissed from this action on January 17, 2012, Plaintiff Squires designated Mr. Axelson as a "may call" witness in her Revised Witness List (doc. #237-1) submitted with the Final Pretrial Order on March 22, 2012.

15

the course of litigation").  *See also Harvey*, 983 P.3d at 41 (holding that allowable costs under § 13-17-202 include the costs of discovery depositions that were "reasonably necessary for the development of the case in light of facts known to counsel at the time [they were] taken").  It would strain all logic to find that a discovery deposition was reasonably necessary for the development of the case, but then preclude recovery of the actual expenses incurred in connection with that deposition.  I find that BOEC's travel-related expenses for the Axelson deposition should be taxed to Ms. Squires.

The remaining expenses claimed in this category by BOEC relate to depositions of individuals who are current (Paul Gamber and Jeff Inouye) or former employees or volunteers with BOEC (Jennifer Phillips and James Trisler), an expert witness retained by BOEC (Ruth DeMuth) and a percipient witness (Jojo Pico).  See  Exhibit Q, nos. 84-86, 90-95, 100, 101, 118-120 (doc. #287-17), attached to Defendant's Motion to Review Taxation of Costs.  Each of these individuals was listed as a "will call" or "may call" witness by Ms. Squires in the Final Pretrial Order, and all of these depositions were taken in or near Breckenridge, Colorado.  *Cf. ICE Corp. v. Hamilton Sundstrand Corp.*, 2007 WL 4334918, at *6 (D. Kan. Dec. 6, 2007) (noting a "general presumption" that depositions of a corporate defendant's representatives will take place at the corporation's headquarters in order to afford the corporate defendant and its representatives a measure of convenience).  I find that the expenses incurred by BOEC in connection with these depositions were reasonable and are recoverable under § 13-17-202.

For the foregoing reasons, I will grant, without deductions, BOEC's request for $8,624.29 in costs incident to taking the specified depositions.

### D.      Other Costs

Section 13-17-202(b) provides that a party whose offer of settlement is not accepted may recover as "actual costs," reasonable expert witness fees, reasonable investigative expenses and fees,

legal research expenses, reasonable travel expenses, "and all other similar fees and expenses." In this final category of costs, BOEC is seeking fees paid to its own testifying and consulting experts, as well as related travel expenses. For example, BOEC requests $19,293.95 for expert fees paid to Ruth DeMuth (BOEC's adaptive skiing expert) and travel-related expenses incurred by Ms. DeMuth in conjunction with court appearances. *See* Exhibit R, nos. 121-126 and 160-164 (doc. #287-18), attached to Defendant's Motion to Review Taxation of Costs. BOEC claims $13,386.25 for expert fees paid to Patrick Kelley, its retained expert in the field of safety knots. *See* Exhibit R, nos. 127-129 (doc. #287-18), attached to Defendant's Motion to Review Taxation of Costs. BOEC claims $10,459.95 for expert fees paid to Margot Burns, Defendant's retained life-care expert, and travel-related expenses incurred by Ms. Burns in traveling to Kansas to interview Ms. Squires and her family. *See* Exhibit R, nos. 130-134 (doc. #287-18), attached to Defendant's Motion to Review Taxation of Costs. I conclude that all of the foregoing expenses were reasonable and are subsumed with the statutory definition of "actual costs."[10] The fees claimed in connection with consulting services performed by Dr. Judith Gooch, totaling $15,300.00 are also recoverable. Dr. Gooch was not retained to provide expert testimony at trial, but rather to review Ms. Squires' lengthy medical records. *See* *Catlin*, 291 P.3d at 413 (noting that a trial court may award costs for an expert who does not testify, including experts hired to provide advisory or consulting services). I find that the decision to retain Dr. Gooch in a consulting role was appropriate in this case, given Ms. Squires' voluminous medical records, her extensive history of medical treatment, and Plaintiff's alleged need for future medical care as a result of the bi-ski accident. All of these issues figured prominently in Plaintiff's case-in-chief at trial and required preparation on the part of defense counsel. I conclude that Dr. Gooch's role facilitated that preparation and those costs should be recoverable under § 13-17-202, either as expert

---

[10]Plaintiff Squires can hardly challenge the relevance of the testimony offered by Ms. DeMuth, Mr. Kelley, and Ms. Burns, as each of these individuals were included as "will call" or "may call" witnesses on Plaintiff's Revised Witness List.

fees or investigative fees, or both.

Defendant is claiming as costs $59,757.42 paid to Persuasion Strategies for "jury consultant services," "mock trial analysis," "trial analysis," and "trial-related issues."[11]  *See* Exhibit R, nos. 142-147 (doc. #287-18), attached to Defendant's Motion to Review Taxation of Costs.  BOEC also seeks to recover $6.80 in delivery charges associated with Persuasion Strategies' involvement in the December 2011 mock trial, and $8.63 for the purchase of carabineers for use in the mock trial.  *See* Exhibit R, nos. 141 and 153 (doc. #287-18), attached to Defendant's Motion to Review Taxation of Costs.  The court is disallowing all of these expenses.

BOEC justifies those particular expenditures by suggesting that its ability to realistically assess litigation risks in this very fact-driven litigation was complicated by the perception that "the general public is not as familiar with adaptive skiing as it is with alpine skiing or snowboarding" and "the dynamic created by the percentage of fault of defendant Goodwin."  However, I find it difficult, if not impossible, to reconcile that statement with BOEC's $351.00 offer of settlement.  If BOEC truly believed that Plaintiff's case was so weak, legally and factually, as to justify that less-than-nominal offer, then paying $59,772.85 for the services of a jury consultant is patently unreasonable.  If, on the other hand, the case truly required the services of a jury consultant to assess the risks of litigation (even after a largely favorable decision on BOEC's motion for summary judgment), then Defendant's September 28, 2010 offer was little more than a sham.  *Cf. In re Williams Securities Litigation*, 558 F.3d at 1148 (in assessing the "reasonableness" of claimed costs, the court should employ the benefit of hindsight, but should base its reasonableness determination solely "on the particular facts and circumstances at the time the expense was incurred").  While Defendant certainly had the right to retain the services of a jury consultant, I will not require the Squires family to reimburse BOEC for

---

[11]Persuasion Strategies apparently assisted defense counsel in preparing voir dire, opening and closing statements, and "witness assistance."  Given the trial experience and professional stature of BOEC's counsel, I am hard-pressed to believe these services were required.

that prophylactic decision.

Similarly, BOEC is seeking to recover $4,000.00 paid to Hansen & Company to provide real-time trial transcripts. *See* Exhibit R, no. 184 (doc. #287-18), attached to Defendant's Motion to Review Taxation of Costs. I will disallow this cost in its entirety. Any transcripts prepared by Defendant's own court reporter could not be accepted as the official court record, and would not have relieved BOEC of the necessity to purchase transcripts from the District Court's contracted court reporting service. I will not require Plaintiff to reimburse BOEC for an expense that was both superfluous and incurred solely for the convenience of defense counsel. *Compare United States Industries, Inc. v. Touche Ross & Co.*, 854 F.2d 1223, 1248 (10th Cir. 1988) (finding no abuse of discretion in denying an award of fees under 28 U.S.C. § 1920 for the cost of daily transcripts in the absence of any showing that daily transcripts were necessary), *implied overruling on other grounds recognized by Anixter v. Home-Stake Prod. Co., 77 F.3d 1215, 1231 (10th Cir. 1996). See also Anderson v. Van Pelt*, 2013 WL 856508, at *8 (D. Colo. Mar. 7, 2013) (denying costs under § 1920 where daily transcripts were obtained not because they were necessary to the litigation of the case at the time of transcription, but because they "might have added to the convenience of counsel").[12]

Exhibit R includes costs associated with obtaining reference materials germane to the factual circumstances of this case. *See* Exhibit R, nos. 156-159 (doc. #287-18), attached to Defendant's Motion to Review Taxation of Costs. BOEC is claiming $93.39 for purchasing reference books on adaptive skiing, knots, and skiing instruction. I will not require Plaintiff Squires to pay these costs. Having determined that Ms. Squires should be taxed for the expert fees paid to Ms. DeMuth and Mr. Kelley, it strains all credibility to suggest that Plaintiff should also pay for research materials that presumably duplicate the expertise provided by those witnesses. Moreover, it seems reasonable to

---

[12]I acknowledge that the standard governing § 1920 is more stringent than § 13-17-202, but the cited cases provide some perspective in applying the "reasonableness" standard under the Colorado statute.

presume that Ms. DeMuth and Mr. Kelley had their own reference materials they could have shared with defense counsel.  While § 13-17-202 allows for the taxation of costs associated with research or case investigation, the court will not require Plaintiff to pay costs that are largely duplicative.  *Cf. Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) (observing that even under a fee-shifting statute, counsel is expected to exercise reasonable billing judgment), *abrogated on other grounds*, *Gisbrecht v. Barnhart*, 535 U.S. 789, 795-805 (2002).

The court will disallow BOEC's request for $152.99, which Defendant attributes to a "telephone conference with John Grund, Greg Gold, and U.S. Magistrate Judge Shaffer."  *See* Exhibit R, no. 135 (doc. #287-18), attached to Defendant's Motion to Review Taxation of Costs.  The court has not been provided with sufficient information to determine the justification or merits of this specific item.  Section 13-17-202 does not allow recovery of attorney fees.  I also note that the telephone discovery conference in question lasted no more than 19 minutes.  *See* Courtroom Minutes/Minute Order (doc. #67).  It is not immediately apparent what "costs" could have been incurred in the course of a brief telephone conference with the court.  Without more explanation, BOEC has failed to sustain its burden of persuasion as to this particular line item.

I will also disallow various delivery charges or service fees claimed by BOEC.  *See* Exhibit R, nos. 148-152, and 154-155 (doc. #287-18), attached to Defendant's Motion to Review Taxation of Costs.  BOEC attributes these total charges of $202.10, to courier deliveries to defense counsel or to BOEC's client representatives in advance of trial preparation meetings.  The court does not find that BOEC has provided sufficient information to evaluate the "reasonableness" of these charges.  For example, Defendant is claiming $97.95 in costs "to deliver [an unspecified number of ] documents to its counsel for the purpose of responding to plaintiff' written discovery requests."  There is an equally cryptic reference to $13.51 for "delivery of documents to Attorney Grund."  There is no indication why, in these particular instances, it was necessary to utilize Federal Express.  *Cf. Valentine*, 252 P.3d

at 1187 (holding that the "burden is on the requesting party to provide 'sufficient information and supporting documentation to allow [the court] to make a reasoned decision for each cost item presented'").

BOEC submits a separate group of charges on Exhibit R that it attributes to "trial preparation and trial including witnesses and experts." While most of these charges are reasonable and subsumed within § 13-17-202, I will not require Plaintiff Squires to reimburse Defendant for multiple trial preparation sessions with the same witness. *See, e.g.,* Exhibit R, nos. 169[13], 170, 171, 172, and 174 (doc. #287-18), attached to Defendant's Motion to Review Taxation of Costs. I will subtract the corresponding charges totaling $254.03 from the amount taxed to Plaintiff Squires.

The court finds that all other charges listed on Exhibit R are reasonable and recoverable under § 13-17-202. Accordingly, the court will deduct $64,475.36 from the charges claimed on Exhibit R and will award under this category the amount of $62,443.59.

## CONCLUSION

For the foregoing reasons, the court will grant in part and deny in part Defendant BOEC's Motion to Review Taxation of Costs. The court will require Plaintiff Squires to pay an additional $76,770.21 in taxable costs.

DATED this 27th day of March, 2013.

BY THE COURT:


     s/Craig B. Shaffer
United States Magistrate Judge

---

[13]Although Exhibit R describes this item as "meals and gratuity" for Mr. Kusumoto's "initial trial-preparation meeting" with BOEC's attorneys, these expenses are dated March 13, 2012, which is the same day that BOEC's attorneys claimed mileage related to travel for Mr. Kusumoto's "second trial preparation" session. It would appear from Exhibit R that counsel met with Mr. Kusumoto initially on February 21, 2012. *See* Exhibit R, no. 168 (doc. #287-18), attached to Defendant's Motion to Review Taxation of Costs